SPRICK BROTHERS INVESTMENT COMPANY, Appellant,
v. WHIPPLE, Respondent.

(145 N. W. 559.)

1   **Frauds, Statute of—Consideration—Verbal Promise.**
An agreement to pay an existing indebtedness of another, which was without consideration, and was not in writing, was not enforceable.

2.   **Trial—Direction of Verdict—Truth of Opposing Evidence—Presumption.**
In determining whether a case should be submitted to jury, the evidence offered for the person against whom verdict is directed must be taken as true, and, if such evidence, with reasonable inferences to be drawn therefrom, presents a cause of action or defense, or reasonable men might draw different conclusions therefrom, it is error to direct a verdict.

3.   **Frauds, Statute of—Test of Agreement—Credit to Promisor.**
In determining whether an agreement to pay for merchandise furnished to another was a promise to answer for another's debt within the statute of frauds, the vital question is, whether the goods were furnished on the promisor's credit,

or wholly or partly on the credit of him who received the goods.

**4. Same—Answering Another's Debt—Original Undertaking—Goods Charged to Promisor.**

Where further credit for goods was refused to defendant's brother-in-law, by plaintiff, and defendant, knowing this, told plaintiff to furnish the son-in-law with goods and charge them to defendant and that he would pay for them, but "to try to get it out of" the son-in-law if he could, **held**, that the promise was an original undertaking, under Civ. Code, Sec. 1973, and not within the statute of frauds as an agreement to answer for another's debt, notwithstanding plaintiff's promise to conceal from the son-in-law the fact that goods were being furnished on defendant's credit.

**5. Trial—Question for Jury—Contradictory Testimony.**

Where plaintiff's testimony was directly contradicted by defendant's upon the main question of fact, the case should have been submitted to jury.

(Opinion filed February 14, 1914.)

Appeal from Circuit Court, Aurora County. Hon. FRANK B. SMITH, Judge.

Action by the Sprick Brothers Investment Company against J. D. Whipple, to recover for goods furnished to a third person on defendant's alleged promise to pay for them. From a judgment for defendant entered upon a directed verdict, plaintiff appeals. Reversed, and remanded for a new trial.

*Bakewell & Bakewell*, and *Theodore Imbs*, for Appellant.

A verdict should not be directed except where the evidence is so conclusive that reasonable minds could not differ as to the result to be reached. Eggland v. South 22 S. D. 467.

When the contract is originally made with the party sought to be charged, and the party seeking to enforce the contract relied exclusively upon the responsibility of such party, the contract is an original one and need not be in writing. § 1973, Civ. Code 1903. Meldrum v. Kenefick 15 S. D. 370; 89 N. W. 863; Atlas Lbr. Co. v. Flint 20 S. D., 104 N. W. 1046; Kessler v. Cheadle, 12 Okla. 489; 72 Pac. 367; 20 Cyclopedia of Law and Procedure p. 183. Lusk v. Throop, (Ill.) 59 N. E. 529; 189 Ill. 127; Larsen v. Jensen, 53 Mich. 427; 19 N. W. 130.

As to the account prior to the date of defendant's promise; appellant contends that it is supported by a consideration in that plaintiff accepted defendant's promise to pay as a substitute for

Sturgeon's liability and charged the account to defendant (Fol. 19) which, under the provisions of 1673 Rev. Civ. Code is all that is necessary to constitute an original obligation of the defendant. Kessler v. Cheadle, supra.

*Fellows & Fellows,* for Respondent.

There is no evidence to take out of the statute defendant's undertaking to pay the antecedent debt of Forty Dollars [$40.00]. Subd. 3, sec. 1973, Civil Code.

There was no consideration for the promise, Id.

Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him, and relied upon him for payment, and therefore that the promise was at most a collateral undertaking. 20 Cys. 183; 29 Am. & Eng. Ency. Law [2d Ed.] 924; Wood v. Dodge 23 S. D. 95, 120 N. W. 774.

The decisive test is whether or not the person for whose benefit the promise was made was responsible for the debt, and if the third person remains responsible to the person who furnishes the articles, the promise is collateral, but not actionable unless reduced to writing. Mankin v. Jones (West Va.) 60 S. E. 248; 15 L. R. A. (NS) 214.

There is no dispute on the plaintiff's testimony, as the motion for a directed verdict concedes the truth of plaintiff's testimony for the purpose of the motion. The Court was justified in withdrawing the case from the jury and directing a verdict, as the facts demonstrate beyond cavil that some credit was extended to the third person, and that plaintiff considered the defendant's obligation to be a simple guaranty.

SMITH, P. J. The complaint alleges "that on or about March 4, 1911, defendant requested this plaintiff to deliver to one J. E. Sturgeon, all the goods, groceries, and merchandise that the said Sturgeon should wish and need, from time to time, and that the defendant promised to pay for all goods so delivered to the said Sturgeon;" that in consideration of defendant's promise, plaintiff delivered to said Sturgeon, between January 6, 1911, and October 13, 1911, goods, groceries, and merchandise amounting to the sum of $308.16, and that defendant has refused to pay there-

for. There was a jury trial, and at the close of all the evidence, the trial court on motion directed a verdict for defendant.

Sturgeon lived on a farm owned by Whipple, who was his brother-in-law. He had traded at plaintiff's store during the years 1910 and 1911, and until plaintiff refused him further credit. Wm. F. Sprick, president and manager of plaintiff corporation, testified that about March 11, 1911, defendant was in the store, and was told by him that credit could no longer be extended to Sturgeon; that thereupon Whipple asked the amount of Sturgeon's indebtedness, and, being shown the amount (about $40), said: "That is all right. I will pay for that, and you furnish them with what goods he wishes until another crop comes on, and charge me with it, but don't let Sturgeon know, if you can help it, that I am standing good for this, because if he knew it, he would abuse the credit, and while he is my brother-in-law, it is hard for me to go after him for money, and I want you to assist me in getting this money back out of Sturgeon as much as you can, and keep it from him that this is charged to me." Sprick further testified that between March 11 and October 13, 1911, $265 worth of goods were delivered to Sturgeon under this agreement. Henry D. Sprick, a stockholder and employee of the store, testified that he was present at the conversation referred to, and fully corroborated the testimony of Wm. F. Sprick. On cross-examination, Wm. F. Sprick testified that the clerks in the store were not instructed to charge to defendant Whipple the merchandise delivered to Sturgeon; that, under the system used in the store, each clerk entered on a slip the goods sold to the purchaser, and the price; that the slips for the Sturgeon goods made by the clerks bore Sturgeon's name, were kept under Sturgeon's name, and a duplicate of the slips given to Sturgeon. Sprick further testified that under said agreement, he opened an account with Whipple for the goods delivered to Sturgeon, and himself copied the slips made by the clerks and put the charge slips in Whipple's account file, and that this was done from the time of the first delivery of goods to Sturgeon. He also testified that he had made efforts to collect this account from Sturgeon, asked for money and for security, but never received either; that on October 11, 1911, he asked Whipple for money on the Sturgeon account, but that Whipple asked him to carry the account over until another crop.

Sprick also testified that a red slip was placed over the Whipple account, so that Sturgeon's daughter, who worked in the store, would not know that the goods furnished to her family were being charged to Whipple. Defendant Whipple admitted having had a conversation with Wm. F. Sprick about March 11, 1911; denied that Henry Sprick was present or took part in the conversation; admitted that the amount of Sturgeon's indebtedness was referred to in the conversation, but denied any agreement on his part to pay it or to pay for goods to be furnished Sturgeon. Whipple also testified to several other conversations with Wm. F. Sprick, but denied any promise or agreement to pay for goods or merchandise to be furnished Sturgeon. This, in substance, is the evidence in the record material to the question raised on this appeal.

Defendant's motion for direction of a verdict was on the grounds: First, that from the evidence, it affirmatively appeared that the undertaking of the defendant, if any, was a guaranty within the statute of frauds, and that the same was not reduced to writing and signed by the defendant; that the evidence fails to disclose any consideration for the guaranty, particularly so far as the account prior to March 11, 1911, is concerned; second, that there was no evidence of the reasonable worth of the goods alleged to have been furnished, nor that they were furnished at an alleged price, nor that the goods, to the amount charged, were delivered to the plaintiff.

[1] The second ground of the motion, we think, requires no separate consideration. Upon these matters, there was clearly enough evidence to go to the jury, and the ruling of the trial court was erroneous, unless it can be sustained upon the first ground specified in the motion. As to the amount of Sturgeon's indebtedness prior to March 11, 1911, there is no evidence in the record which could sustain a recovery by plaintiff. Defendant's agreement to pay this indebtedness, if made, was without consideration, was a promise to answer for the debt of another, and was not in writing. As to this indebtedness the court was clearly justified in directing a verdict.

In considering the further question of error in the direction of a verdict for defendant, all conflict in the testimony

must be eliminated, and the question must be determined on the plaintiff's evidence alone.

[2] The law has been long settled in this and other jurisdictions that, in determining whether a case should have been submitted to a jury, the evidence offered on behalf of the person against whom a verdict is directed must be accepted as true, and if such evidence, with fair and reasonable inferences to be drawn therefrom, presents a cause of action or defense, or is such that fair-minded and reasonable men might draw different conclusions therefrom, but is disputed by the opposite party, it is error to direct a verdict. Upon this appeal therefore, we must accept plaintiff's evidence as stating the facts, and the question is whether such evidence, standing alone, would entitle plaintiff to recover. If so, it was error to direct a verdict in this case, for the reason that the disputed facts should have been submitted to the jury.

This rule has been so frequently announced by this court and so uniformly followed in other jurisdictions that a citation of authorities seems unnecessary. It is respondent's contention that this case is within and is controlled by the decision of this court in Wood v. Dodge, 23 S. D. 95, 120 N. W. 774. In this we think respondent is in error. The law as announced in that case is clearly correct, and is sustained by text writers generally, and especially by the decisions of courts in those jurisdictions having statutes like our own.

The question decisive of this appeal is whether the oral agreement, as testified to by plaintiff, under which the merchandise sued for, as delivered to Sturgeon, is to be deemed an original obligation of the defendant, Whipple, or whether it amounts merely to a collateral agreement or promise on the part of Whipple to pay any indebtedness of Sturgeon thereafter contracted for merchandise furnished to him.

[3-4] In the determination of this question the vital fact is whether the merchandise was furnished on the credit of Whipple, or wholly or partly on the credit of Sturgeon. On the record, as we must view it, the fact stands undisputed that at and prior to the transaction between the Spricks and the defendant Whipple, on or about March 11, 1911, the plaintiff had absolutely refused to extend further credit to Sturgeon, or to furnish him further

merchandise. The defendant, Whipple, then being informed that further credit had been and was refused Sturgeon said, as testified to by Wm. F. Sprick: "You furnish them with what goods he wishes until another crop comes on, and charge me with it. * * * From now on charge it to me and deliver the goods to Sturgeon, what they need, and I will pay for it, but try to get it out of Sturgeon if you can." For the purposes of the question under discussion, this statement must be accepted as true. It is likewise undisputed that subsequent to this conversation, merchandise to the amount of $265 was furnished and delivered to Sturgeon by plaintiff. Sprick testified that plaintiff relied on Whipple for payment for the merchandise so furnished. Accepting this statement as true, and bearing in mind that all further credit had been refused Sturgeon by plaintiff, no other conclusion could be drawn than that the merchandise thereafter furnished was wholly on the credit of Whipple. According to the testimony the defendant directly authorized the merchandise to be charged to his account, and himself agreed to pay therefor. The promise on the part of plaintiff to conceal from Sturgeon the fact that the merchandise he was receiving was being furnished on Whipple's credit, and that plaintiff would assist Whipple in getting money for this merchandise out of Sturgeon, if he could, in no manner affected or changed Whipple's original obligation to pay therefor. These facts broadly distinguish this case from Wood v. Dodge, 23 S. D. 95, 120 N. W. 774, where, in speaking of the transaction relied upon by plaintiff as constituting an original obligation, the court said: "Nothing was said as to whom it [the merchandise] should be charged to. The defendant had an account with plaintiffs at the same time, but the goods in question were charged solely to Miller. The testimony is entirely silent as to whether or not the plaintiffs would have delivered these goods without first having received whatever promise, if any, was made by the defendant, and there was absolutely no testimony as to whether the credit for these goods was extended relying upon any promise made by the defendant," Section 1973, Rev. Civ. Code, declares that: "A promise to answer for the obligation of another * * * is deemed an original obligation of the promisor, and need not be in writing * * * where the creditor parts with value * * * in consideration

of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety." If Whipple, therefore, was the principal debtor, and the merchandise was furnished on his credit, and Sturgeon was, or became, nothing more than his surety, and if the plaintiff parted with the merchandise in consideration of the oral promise of Whipple to pay therefor, the transaction was not within the statute of frauds, but constituted an original obligation on the part of Whipple. It follows that the trial court erred in directing a verdict for defendant.

[5] The testimony on the part of plaintiff was directly contradicted by the testimony of defendant, and the case should have been submitted to the jury, under proper instructions, to determine the facts.

The judgment and order of the trial court are reversed, and the cause remanded for a new trial.

McCOY, J., concurs in the conclusion.