FIRST NAT. BANK OF TORONTO, S. D., Respondent, v. HAMMER, Appellant.

(220 N. W. 872.)

(File No. 6136. Opinion filed August 10, 1928.)

*E. A. Berke,* of Brookings, for Appellant.

*Law, Dobie & Law,* of Clear Lake, and *Walter M. Aaberg,* of Brookings, for Respondent.

BROWN, J. In this action, commenced March 18, 1925, to recover on the oral promise of defendant to pay, verdict and judgment were for plaintiff, and from the judgment and an order denying a new trial and denying a motion for judgment notwithstanding the verdict, defendant appeals. Plaintiff's cashier testified that defendant's son, George, desired to borrow $1,200 to pay interest on a real estate loan, but, as he already owed the bank, they refused to make the loan, unless he could get his father to sign the note; thereafter defendant and George came to the cashier's house one evening in the latter part of February, 1921, and defendant said to the cashier that he had $1,200 in interest coming on March 1st, and that the cashier should advance $1,200 to George and defendant would pay it; that relying on this promise the bank paid George's check to G. F. Knappen for $1,219.64. This check was carried by the bank for a few days as a cash item until George came in, when the bank took his note for $1,219.64, dated March 3, 1921, and due 30 days after date, with interest at 10 per cent. This note was renewed from time to time, payments being made at intervals by George on his obligations to the bank, without designation by him as to which obligation the payments should be applied upon, and finally all his obligations to the bank, including the $1,219.64 note, were merged in a note for $3,500, dated March 17, 1924, due October 1, 1924, with interest at 10 per cent, made by George alone and secured by chattel mortgage. A payment of 223.21 was made on this note December 29, 1924, and on March 11, 1925, $2,000 was realized from a sale of the chattel security and indorsed on the note.

From the time the money was advanced until the time this suit was commenced, this item of $1,219.64 was carried on the books of the bank solely as an indebtedness of George Hammer,

and the books have not at any time shown any charge against defendant on account of this indebtedness.

Defendant and George testified that defendant did not promise to pay the 1,200, but said that he had $1,200 in interest coming to him on March 1st and that the loan to George would be paid with that interest. This interest was due on deferred payments for land defendant had sold and was evidenced by two coupons, one for $480 and the other for $720, which coupons were then in plaintiff bank for collection or were received by it within a few days after this talk and before the money was paid out on George's check. The $480 coupon was paid at Farmers' Exchange Bank in Toronto and defendant got that coupon from plaintiff and surrendered it to Farmers' Exchange Bank. George Hammer checked the $480 out to pay rent that he owed and plaintiff got none of it. The $720 coupon was never collected. The party owing it having defaulted in his payments, defendant foreclosed and took back the land which was security for its payment. Defendant never at any time signed any note or other writing agreeing to pay the amount.

The cashier testified that the note was taken for the short time of 30 days for the reason that they expected defendant to come in and make settlement; that they intended to get the money out of these two coupons in the ordinary course of collection. He testified that the first time defendant was asked for payment was a year or two before suit was brought, and that in the spring of 1925 he went to defendant's farm and asked him about paying George's obligation that he said he would pay, and defendant replied that he would not pay it because he had not got his interest.

██ ██ At the close of all the evidence defendant moved for a directed verdict, on the ground that defendant's alleged promise was a collateral promise to pay the debt of another thereafter to be contracted; that such debt was thereafter contracted by George upon his credit and for which he gave his own note which had been renewed a number of times and which was secured by him; and that under these conditions the promise of defendant was within the statute of frauds and was not valid unless in writing. The motion was denied and the court, among other things, instructed the jury that, if the money was advanced by the bank wholly or partly on the credit of George Hammer, then plaintiff cannot recover, for in that instance the obligation of the defendant would

be a collateral agreement, and, not being in writing, would be un-enforceable by plaintiff. This instruction is in accordance with the law as announced by this court in numerous decisions. Wood v. Dodge, 23 S. D. 95, 120 N. W. 774; Sprick Bros. Inv. Co. v. Whipple, 33 S. D. 287, 145 N. W. 559; Hepner v. Wheatley, 34 S. D. 338, 148 N. W. 594; McAdam v. Vallenthime, 40 S. D. 277, 167 N. W. 171. Many of the cases in which this question arises are actions for goods sold and delivered to a third party, but the rule is the same whether for goods sold or money advanced, and is thus stated in 27 C. J. 140:

"In many cases in which goods have been sold or money has been advanced to one person on the oral promise of another to be answerable therefor, a decisive test as to the applicability of the statute of frauds to the promise is afforded by the determination of the question on whose credit the goods were sold or the money advanced. If it appears that the sale or loan was made in reliance solely on the credit of the promisor, and on his unconditional agreement to be answerable therefor, the statute does not apply. * * * But in all such cases it is requisite that credit should be given exclusively to the promisor; if any credit is given to him for whose benefit the promise is made the promise is collateral and within the statute, and this is so, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the performance of the service. Where the promise is shown to be collateral, the question whether the creditor relied on the credit of the promisor becomes immaterial. There is some authority for the view that the promise is original and not within the statute, although the third person who received the benefit is also concurrently liable therefor, provided the credit was given solely to the promisor, and the promisee did not rely upon the liability of the third person. But the great weight of authority rejects this view and holds that if the third person in liable at all the promise is collateral and must be in writing, unless there is a new consideration beneficial to the promisor received under such circumstances that he thereby comes under an independent duty to pay without regard to the liability of any other person."

In Wood v. Dodge, supra, it is said:

"If any credit whatever is given to the third person, so that he is in any degree liable, the oral promise of the other party is not valid."

In the present case it certainly cannot be said that the bank considered George Hammer in no degree liable for this indebtedness. When asking defendant to pay it, four years after it was contracted, the cashier of plaintiff bank referred to it as George's obligation. That plaintiff considered it an obligation of George's from the beginning to the end is shown by the fact that it carried George's check as a cash item, for payment of which George would be liable, until it received George's note for the amount; that this note bore interest at 10 per cent, which could not be exacted on defendant's oral promise; that the note was renewed from time to time and ultimately merged with other obligations of George in his note for $3,500 secured by chattel mortgage; that George made payments from time to time, at least one of which, for $223.21, made December 29, 1924, was applied on this note.

It seems to us that the evidence on behalf of plaintiff itself shows conclusively that in making the loan some credit was given to George, and he certainly was held by the bank to be liable for the debt. Under the law as stated by the court in the instruction to which we have referred, the motion for a directed verdict should have been sustained, and the judgment and orders appealed from are reversed, and the cause remanded, with instructions to enter judgment for defendant notwithstanding the verdict.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.