TURTON AND SERCOMB, Plaintiffs in Error,

*vs.*

WALTER BURKE, Defendant in Error:

ERROR TO MILWAUKEE COUNTY COURT.

ACTION of assumpsit commenced before a justice of the peace of Milwaukee county, by Thomas Turton and John Sercomb, against Walter Burke, and brought by appeal to the county court of said county.

The plaintiffs declared in the common count, and filed a bill of particulars for "Amount of fulling-mill irons for James Murray, $63.18." The defendant pleaded the general issue. Upon the issue so framed the parties proceeded to trial in the county court.

On the trial in the county court, it appeared that certain fulling-mill irons, &c., had been ordered of the plaintiffs, who were partners, machinists doing business in Milwaukee, for a Mr. Murray; which the foreman of the shop was directed not to deliver, except on the order of the defendant, Burke. The irons were manufactured and subsequently delivered on the following order, which was likewise read in evidence:

"*January* 7, 1852.

Messrs. Turton & Sercomb:

Please let A. Boughton have the fulling-mill crank and other work for Thomas Murray. WALTER BURKE."

The witness Boughton, named in the foregoing order, testified that the order aforesaid was delivered to him by the defendant below; that he took it to the shop of the plaintiffs and delivered it to the clerk or foreman, and got the fulling-mill irons in question; that he kept them about three months. Murray left the country about two months after he got the irons.

The plaintiffs then offered to prove by this witness that the irons were delivered to the defendant; that the defendant received the property, sold it, and received pay for it, which offers were objected to by the defendant, the objections sustained by the court, and exceptions taken.

The evidence being closed, the defendant's counsel requested the court to instruct the jury:

1. That if they find from the evidence, that the mill irons and property mentioned in the plaintiffs' declaration, were purchased by Thomas Murray, and the credit was given to him by the plaintiffs, then they must find for the defendant. 2. That there is no sufficient note or memorandum in writing (in case the credit was originally given to Murray) to bind Burke to pay the debt of Murray.

Thereupon the court charged the jury that the question for them to determine from the evidence, was whether there was any original liability on the part of Murray for those irons, which continued up to the time of giving the order by Burke; and if they found that Murray was liable for these castings at the time Burke gave the order, then the defendant, Burke, is not liable in this action, unless the order signed by him was such a written promise to answer for a debt of another, as is required by the statute of frauds; and the statute was read to them, and the jury were told the writing was not such an undertaking as the statute required. The counsel for the defendant then asked the court if he meant by the words "Murray's being originally liable," the fact whether the credit was given to Murray; and the court, in presence of the jury, remarked that he did.

The jury retired, and after due deliberation returned into court, and delivered their verdict of "no cause of action;" whereupon judgment was entered against said plaintiffs, in favor of said defendant, for costs.

*E. Foote*, for the plaintiffs in error.

*J. Downer*, for the defendant in error.

*By the Court*, WHITON, C. J. We think that the instructions given by the court to the jury, were correct. The instructions were, in substance, that the question for the jury to consider, was, whether the credit was given to Murray or not. If it was, then the order signed by the defendant for the castings, would not make him liable, for the reason that it was not such a writing as was required in order to make him liable for the debt of another.

These instructions were undoubtedly correct. If the castings were in fact sold to Murray, and the credit given to him, the defendant, Burke, could not be made liable by reason of the paper which he gave, as it contained no promise to answer for the debt of Murray, nor did it express any consideration. *Rev. Stats. chap.* 76, § 2.

But we think that the judge excluded testimony which if it had been received, would have tended strongly to show that the castings were in fact sold to Burke, and not to Murray.

The witness Boughton testified that he obtained the castings upon the order which was given by Burke, and kept them about three months.

The plaintiffs then offered to show, that they were delivered by the witness to Burke, which offer was objected to by the defendant, and the objection was sustained by the court, and plaintiffs excepted. Questions were put to the witness Boughton by the plaintiffs' counsel, to show that the castings were delivered by him to Burke, but the court ruled that they were improper.

We think that this ruling of the judge was incorrect. The question was, as was stated to the jury, to whom were the castings sold? Who was the purchaser? If Murray was the purchaser the defendant was not liable, but if they were purchased by the defendant himself, he would, of course, be obliged to pay for them. The testimony ruled out by the judge was important for the purpose of showing who the purchaser of the castings really was; especially so as there is no testimony to show that they ever came to the possession of Murray. Boughton testifies that he was in Murray's employ, and went to get the castings, but he does not say that Murray sent him for them, or told him to get them. He further testifies, that he kept them about three months, and on his cross-examination says, "Murray left the country about two months after I got the irons; about three years ago." This is pretty strong negative proof that Murray never received them, as they were kept by the witness until after he went away, and as there is nothing to show that the witness was authorized to receive them for him.

The castings were, without doubt, delivered to the witness on the order, and at the request of Burke, and testimony to show that they were delivered by the witness to Burke, was there-

fore relevant and important, for the purpose of showing that he really was the purchaser. It is true, that the order of Burke requests the plaintiffs to let Boughton have the castings for Murray; but if Boughton was not authorized by Murray to get them, and they never were in fact delivered to Murray, he was not the purchaser, and the plaintiffs could maintain no action against him to recover their value. Under such circumstances we have no doubt that the plaintiffs could regard Burke as the purchaser upon whose order the castings were delivered, and to whose possession they came. The judgment of the court below must be reversed, and a new trial ordered.