## ATLAS LUMBER & COAL CO. v. FLINT.

Where a father contracted for the purchase of lumber for the erection of a dwelling for his daughter and son-in-law, and credit was given to the father, he was primarily liable, and his promise to pay was an original and not a collateral one, and need not be in writing, within the statute of frauds.

Where plaintiff, suing for lumber used in the erection of a dwelling for defendant's daughter and son-in-law, knew from the pleadings that defendant would attempt to avoid payment by claiming that his promise was an oral collateral promise and void under the statute of frauds, it was competent for plaintiff, before examining defendant in reference thereto, to prove by a third person that defendant had stated that he furnished the money for the dwelling.

(Opinion filed, Oct. 3, 1905.)

Appeal from Circuit Court, Codington County. Hon. JULIAN BENNETT, Judge.

Action by the Atlas Lumber & Coal Company against M. D. Flint and another. From a judgment for plaintiff, defendant M. D. Flint, appeals. Affirmed.

*Seward & McFarland,* for appellant. *George W. Case* and *John B. Hanten,* for respondent.

Fuller, P. J. This action was to recover from the appellant, M. D. Flint, as an original debtor, about $2,100 for lumber and other building material used in the construction of a residence for his daughter and codefendant upon a certain lot in the city of Watertown of which she was the owner. That a bill of lumber aggregating the amount recovered was furinshed by respondent and used by Mrs. Adams and her husband for the purpose of building the house is not disputed; but on behalf of M. D. Flint, who alone appealed, it is contended that the evidence is insufficient to sustain the verdict, that incompetent testimony was admitted at the trial, that the credit was extended to Adams, and that appellant's promise to pay was an oral collateral undertaking, void under the statute of frauds.

Though controverted in practically every material respect, the corroborative facts and circumstances are sufficient to justify the jury in believing the testimony of H. L. Harris, respondent's managing agent, which was properly admitted over the objection of

counsel for appellant, as follows: "Along in January 14, 1902, according to our books, Mr. Flint paid an account which he had with us. He then spoke about Dr. Adams being about to build a house, and he said to me, 'When the doctor gets ready, let him have such lumber as he wants, and I will pay for it.' He also reiterated that statement March 31st, when he paid the balance of his account. Mr. Flint said, 'Go ahead, and let the doctor have what material he wants,' and, he said, 'I will pay for it—not just at present, but in 60 or 90 days.' Soon after this, this bill for the building material for Dr. Adams' house was brought to us for an estimate. I cannot just remember who is was that handed me the bill. I made out an estimate of the lumber bill. It was made out to M. D. Flint, for Dr. Adams. We have the original estimate that was made. There were several items before the bill was estimated. This is our regular estimate book, in which we enter such bills. This book purports to show the goods that we proposed to furnish for the money. The estimate contained on pages 65, 66 and 67 is the estimate of the entire bill as delivered by me at a later date, with a few changes and extras. I delivered lumber under this estimate according to the conversation that I have detailed that I had with Mr. Flint. The first delivery was made June 23d. These were extras. They were used in the foundation walls. The delivery of the real bill bgan on August 15, 1902. The last item delivered on the bill was on December 29, 1902. * * * Not any of this account has been paid. I had some talk with Mr. Flint before the delivery of the material relative to its being for use in the construction of Dr. Adams' house —the house that he intended to build. I do not recall anything being said as to credit being extended to Dr. Adams or Mrs. Adams, either before or after the delivery of the goods. I think not. I think it was talked about at the close of the year after that. I think that I have stated all the conversation that I and Mr. Flint had relative to this bill before it was delivered. I did not have any talk with Dr. Adams relative to the delivery of this bill before it was delivered. All of the talk I had was with this defendant, Mr. Flint." Although the books of respondent corporation show that every item in the bill was charged to the account of appellant, Flint, at the time

of its delivery, Dr. Adams testified that he contracted with Mr. Harris for the lumber on his own account without mentioning the name of Mr. Flint, and concerning their negotiations says: "There was nothing said at all about the manner in which the bill should be paid. I did not have any talk with him about who should pay the lumber bill. That is what seemed to me so funny all the way through. There was nothing said about recompense. There was nothing said about Mr. Flint's putting in his money to pay for it. Money was never brought in when we had any talk." The foregoing testimony, when considered with the other evidence, including the fact that the record discloses a lack of promptness on the part of the witness in the payment of his debts, is sufficient to justify the inference that the financial feature of the transaction had been previously arranged, and that respondent was relying exclusively upon appellant to pay the money.

When appellant first told respondent to furnish the building material for the house, and he would pay for it, no liability of any kind had arisen against either Dr. Adams or his wife, and consequently there was no obligation at that time to which appellant's promise could be collateral. The controlling question here presented and under consideration is elucidated as follows by the author of a standard authority: "It is apparent that the question, 'To whom was the credit given?' often becomes highly important. If the credit is given to the promisor alone, his promise need not be in writing. But if credit is given to a third person to any extent, and the promise is collateral to the liability of such third person, it must be in writing. The solution of this question is frequently a matter of great difficulty, and no general rule which will serve as a test can be given. In each case the 'expressions used, the situation of the parties, and all the circumstances of the case should be taken into consideration.' It has been held that a promise 'to be the paymaster' of one who should render services to another was an original promise and not within the statute, but that, if the words were 'to see him paid' it was collateral and within the statute. Where the defendant inquired of the plaintiff the terms on which he would let C., his nephew, have newspapers to sell, and on being told the terms

said, 'If my nephew calls for the papers, I will be responsible for the papers he shall take,' it was held that this was an original and absolute contract on the part of the defendant and not within the statute. An order was: 'Please give the bearer, Henry Fink, the goods which he will select, not exceeding over $550, on my account.' Goods having been delivered to Fink on the order, it was held that the writer of the order was liable as principle, and not as guarantor. If goods are sold on the credit of the promisor alone, his promise to pay for them need not be in writing, even though they are delivered to a third person." Brandt, Sur. § 63. From sufficient evidence, viewed in the light of the court's instructions, concerning which no complaint is made, the jury must have found that the credit was given neither to Dr. Adams nor his wife, but to appellant, who primarily obtained such credit and contracted the indebtedness for the benefit of his daughter and son-in-law, and the following authorities hold that such a transaction amounts to an original indebtedness, which need not be evidenced by writing, and involves no provision of the statute of frauds. Meldrum v. Kenefick, 15 S. D. 370, 89 N. W. 863; Dean v. Tallman, 105 Mass. 443; Arbuckle v. Hawks, 20 Vt. 535; Glenn v. Lehnen, 54 Mo. 45; Cowdin et al. v. Gottgetreu, 55 N. Y. 650; Ueberroth v. Riegel, 71 Pa. St. 280; Hetfield v. Dow, 27 N. J. Law, 440; Turton & Sercomb v. Burke, 4 Wis. 119; Briggs v. Evans, 1 E. D. Smith, 192; Barker v. Bucklin, 43 Am. Dec. 726.

Before the defense had introduced any evidence, the witness Kreger, called on behalf of respondent, after specifying the time, place and circumstances of the conversation, was allowed to testify, over the objection of counsel for appellant, in part as follows: "Mr. Flint and I were walking by the house. We walked back and forth several times, and he was rather finding fault because the house did not go up faster. He said that he had told Dr. Adams to get more men to work on it, or in a common phrase, to get a move on the building, and to get it inclosed before the winter. One word brought on another, and he told me that he was furnishing the money for the house, and he said that he would like to see it go up faster, so that they would have a nice home." It seems to be well established

that, when a litigant knows, from the pleadings and otherwise, that his adversary will attempt to defeat his claim by denying its existence, he may offer evidence of admissions or corroborative declarations, made by sucn adversary against his own interest, without previosuly examining him relative thereto, and before he has testified at the trial. Brown v. Calumet River Ry. Co., 125 Ill. 600, 18 N. E. 283; Wisconsin Planing Mill Co. v. Schuda et al., 72 Wis. 277, 39 N. W. 558; Southern Ins. Co. v. White, 58 Ark. 277, 24 S. W. 425; German Nat. Bank of Hastings v. Leonard, 40 Neb. 676, 59 N. W. 107; volume 1 Jones on Evidence, § 237.

Appellant's primary liability as the real debtor being shown to the satisfaction of the jury by competent evidence, the remaining assignments of error, which pertain to the rejection or admission of immaterial and unprejudicial testimony, need not be discussed. although the same have received careful consideration.

The judgment appealed from is affirmed.