HEPNER, Respondent, v. WHEATLEY, Appellant.

(148 N. W. 594.)

1. **Appeal—Order Denying New Trial—No Appeal from Judgment —Scope of Review—Insufficiency of Evidence.**

    Upon appeal from an order denying a new trial, though no appeal is taken from the judgment, insufficiency of evidence to support the verdict may be reviewed.

2. **Frauds, Statute of—Guaranty Contract—Necessity of Writing.**

    Plaintiff furnished groceries to defendant's sons, as shown by plaintiff's evidence, as follows: Defendant came to the store, asked the amount of the bill, and paid it in full; he then told plaintiff to "let the boy have goods," "let the boys have goods to any extent," " it would be all right to let the boys have goods;" plaintiff continued to furnish groceries to said sons, all of which were charged to one of the sons, the salesman testifying he did not know defendant's name when the entries were made; part of the final balance was paid by one or both of the sons; plaintiff's son, who assisted in running the store, stated to plaintiff, in response to a question as to who paid the account, that defendant "guaranteed the payment," that the goods were sold to John, defendan't son. There was no written evidence of defendant's agreement. **Held,** that the agreement of defendant was, at most, under the statute of frauds, only a guaranty that the account would be paid, and was not an independent promise by defendant to pay for the goods, which Civ. Code, Sec. 1973, subd. 2, provides may rest in parol.

(Opinion filed September 8, 1914.    Rehearing pending.)

Appeal from Circuit Court, Miner County.    Hon. ALVA E. TAYLOR, Judge.

Action by John S. Hepner against Grant Wheatley, to recover for goods furnished by plaintiff to defendant's sons, but sold to defendant.    Judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals.    Reversed.

*C. C. Caldwell,* for Appellant.

(2) Under point two of the opinion, Appellant cited:

Abbott's Civil Trial Brief, p. 749; Carrer v. Detroit Company, 43 N. W. 370 (Mich.).

Respondent cited:

Atlas Lumber & Coal Co. v. Flint, 20 S. D. 118.

POLLEY, J.    It appears from the record in this case that plaintiff, J. S. Hepner, is the owner of a general store at Vilas

His son, W. .S. Hepner, is in charge of such store as manager, and this action is for the recovery of the balance claimed to be due from the defendant for groceries sold and delivered to defendant's son, John Wheatley, by said W. S. Hepner and other employees in the said store. Defendant was a resident of the state of Nebraska, and made only occasional visits to his sons, John and Will Wheatley, who lived in Miner county; and no part of the goods constituting the account sued upon were sold or delivered to, or used by, defendant himself. It is not claimed that there was ever any written order or memorandum signed by defendant, but it is claimed by plaintiff that the defendant is liable as the actual purchaser of the goods. Plaintiff had judgment, and defendant appeals.

To show an original obligation on the part of appellant, W. S. Hepner testified to the following facts: That he was manager of the store. That in March, 1909, John Wheatley came to the store and asked for goods on credit; he said his father, the defendant, would pay the bill. On the strength of this promise, witness allowed John Wheatley, during the next few months, to run a bill of something like $30. In the fall of 1909, defendant came into the store and asked for the amount of the bill and paid it in full. During the following year, defendant's said sons run another account, and, in the fall of 1910, defendant came in and paid that account. At this time, witness claimed to have had a conversation with defendant in which defendant said:

"It would be all right to let the boys have the goods, but not to let the hired man have anything without a written order from either him or the boys. After that time * * * I furnished the boys with goods on Grant Wheatley's word. He didn't just tell me he would pay for them, but he said I could let the boys have goods. That is the reason I let them have the goods. I know John Wheatley and his brother. I have never asked John Wheatley or his brother to pay for these goods."

And, again, he testified:

"I was selling goods to John Wheatley and charging them to Grant Wheatley, from March until some time in the fall, without having any talk with Grant Wheatley at all. The next year, I had a conversation with Grant Wheatley, at the time when he paid up the bill up to some time in the fall of 1910, and he told me it was

all right to let the boys have goods. * * * He said: 'Let' the boys have goods to any extent.' I would assume that he meant that if I would let the boys have goods he would pay for them. * * * He told me it was all right to let the boys (he meant his boys), but not to let the hired man have any without a written order from the boys. That was all there was to that conversation."

The account sued upon originally amounted to $129.85; but it had been left at the bank for collection, and $46.14 had been paid thereon. Part of this was paid at the bank and the balance was paid in produce and "was brought in either by John or his wife, or some of the boys, and the produce was applied on this account." It is not claimed that any part of the account was paid by defendant or that the account was presented to him until after the above payment had been made. The account itself was admitted in evidence. It consisted of 59 separate slips, upon each of which various charges were made; but they were all made out to John Wheatley, and defendant's name did not appear on any one of them. This fact was explained by the witness by saying that he did not know Grant Wheatley's name at that time; that he wanted some way of identifying the account; and that he did not know but what defendant's name might be John. The plaintiff, on his own behalf, testified relative to a conversation he had had with his son W. S. Hepner, as follows:

"I asked my boy who paid Wheatley's account, and he told me Grant Wheatley guaranteed the payment. Yes, that Grant Wheatley guaranteed the payment. That is what my son told me; that these goods were being sold to John, but that his father guaranteed the payment. That is what I figured all the time."

At the close of plaintiff's testimony, defendant moved for a directed verdict, on the ground that plaintiff had not shown the quantity nor value of the goods sold, or that defendant had ever authorized the sale of the goods to his sons or had ever promised to pay for same, and that the promise claimed to have been made was not in writing, and was therefore void, under the provisions of the statute of frauds. The motion was denied, and the ruling thereon, as well as the ruling upon the admission of certain evidence, is assigned as error.

[1] The appeal is from the order overruling appellant's motion for a new trial. At the outset, it is contended by respondent that on an appeal from an order overruling a motion for a new trial, where there is no appeal from the judgment, this court cannot review rulings of the trial court, made during the trial of the case, citing Brison v. Brison, 90 Cal. 323, 27 Pac. 186; Spanagel v. Dellinger, 38 Cal. 284; Martin v. Matfield, 49 Cal. 45; In re Doyle's Estate, 73 Cal. 571, 15 Pac. 125. It is not necessary to express an opinion upon this matter, for the insufficiency of the evidence to support the verdict is also assigned, and it is conceded by respondent that this assignment presents a matter that may be reviewed by this court upon an appeal from an order overruling the motion for a new trial. The question, then, is: Does the undisputed evidence on behalf of respondent entitle him to a verdict?

[2] There is no question but that the alleged promise of defendant was made wholly for the benefit of his said sons, John and Will; nor is it claimed that defendant received any consideration whatever for such promise, nor that the same was evidenced by any memorandum or writing of any kind. This brings the case clearly within the statute of frauds, unless the circumstances are such as to make it an exception to the rule and bring the case within the provisions of subdivision 2 of section 1973, Civ. Code. This section reads as follows:

"A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: (1) * * * (2) Where the creditor parts with value or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety. * * *"

The question here presented has been frequently before this court. Sprick Bros. I. Co. v. Whipple, 145 N. W. 559; Wood v. Dodge, 23 S. D. 95, 120 N. W. 774; Atlas Lumber Co. v. Flint, 20 S. D. 118, 104 N. W. 1046; Meldrum v. Kenefick, 15 S. D. 370, 89 N. W. 863. But no attempt has been made to formulate any general rule governing all cases, and each case must be governed by its own peculiar facts. The facts in this case are very similar to the facts in Wood v. Dodge, supra, and what is said by

the court in that case applies with equal force here. In that case the plaintiff Wood delivered goods to one Miller, and the court, in reviewing the facts, at page 97 of 23 S. D., and page 775, of 120 N. W., said:

"The plaintiffs delivered to Miller the goods for which this action was brought and charged the same to Miller on their books. That Miller was at all times, when receiving such goods, a renter, renting lands belonging to the defendant. That prior to the delivery of any of the goods in question, to-wit, on October 7, 1903, the defendant paid for certain goods which plaintiffs had furnished to Miller during the year prior; the defendant having written a letter that he would pay for such goods. That on said October 7, 1903, one of the plaintiffs asked the defendant what about the next year, and the evidence on behalf of the plaintiffs is somewhat conflicting as to the answer given by the defendant; the several witnesses testifying to the following different answers: 'You let Mr. Miller have what he wants for the farm. I will stand for it.' 'Let him have what he wants and I will pay for it.' 'Let him have all he needs for the farm, and I will see that it is paid.' 'Let Miller have what he needed on the farm, and it would be paid for.' Nothing was said as to whom it should be charged to. * * *"

In this case, defendant said: "It would be all right to let the boys have goods." He said: "Let the boys have goods." "Let the boys have goods to any extent." And the witness said: "That is the reason I let them have the goods." "I was selling the goods to John Wheatley and charging them to Grant Wheatley until some time in the fall, without having any talk with Grant Wheatley at all." In Wood v. Dodge, nothing was said as to whom the goods should be charged. In this case, nothing was said as to whom the goods should be charged. In that case, the goods were charged to Miller, the person to whom they were sold. In this case, the goods were charged to John Wheatley, the party to whom they were sold. In that case, it did not appear that the plaintiff would not have delivered the goods without having received whatever promise was made. In this case, as much cannot be said, because it appears that credit was extended to John Wheatley long before plaintiff or his son had ever received any promise from defendant, and the witness W. S. Hepner, who sold the goods and did all the talking with defendant, told plaintiff that Grant Wheat-

ley guaranteed the account sued upon; "that these goods were sold
to John, but that his father guaranteed the payment." This, then,
according to the word of the party who conducted the entire trans-
action, was the real contract, if any contract at all was made. It
was a guaranty that the account would be paid; but a guaranty is
only a collateral undertaking and implies a principal undertaking
by a third party; and such a promise, in order to be binding upon
the promisor, must be in writing. At page 180, 20 Cyc., it is said:

"A decisive test as to the applicability of the statute of frauds
to the promise is afforded by the determination of the question on
whose credit the goods was sold, or the money advanced. If it
appears that the sale or loan were made in reliance solely on the
credit of the promisor and on his unconditional agreement to be
answerable therefor, the statute does not apply."

And, "an oral promise to pay for goods furnished at the
promisor's request to a third person is not valid if the transaction
is wholly or partly upon the credit of the third person so as to
create a debt against him to which the oral promise is merely
collateral. If any credit whatever is given to the third person, so
that he is in any degree liable, the oral promise of the other party
is not valid." Wood v. Dodge, supra.

In this case, it cannot be said that John Wheatley was not
liable for the goods sued upon in this action. It was he who pur-
chased the goods. He purchased them solely for his own benefit
and used them wholly for his own benefit. So far as appears from
this record, he did not know that his father, or any one else, had
ever promised to pay for them or to see that the bill was paid, or
that anything else had been done that would, in any wise, affect
his liability for the entire account. That he considered himself
liable on the account is evidenced by the fact that he made a
voluntary payment thereon.

And, again, quoting from 20 Cyc. 183, it is said:

"In determining to whom, as between the promisor and the
person for whose benefit the promise is made, the credit was
actually given, an important consideration is the manner in which
the creditor entered the transaction on his books. Evidence that
the goods sold were charged to the person to whom they were
delivered strongly tends to show that the vendor gave credit to
him and relied upon him for payment, and therefore that the

promise of another to be answerable for the debt was, at most, a collateral undertaking."

In this case, the goods were all charged to John Wheatley, the person to whom they were sold and delivered, and by whom they were used. True, the witness who transacted the business explained this feature of the transaction by saying he did not know defendant's name. While this may present a matter for the jury, the explanation is not very satisfying where so many opportunities are shown for learning defendant's name.

Upon the whole record, we do not believe that the facts in this case as made out by the undisputed evidence on behalf of the plaintiff bring it within the exception named in section 1973, Civ. Code, and defendant's motion for a verdict should have been granted. In Wood v. Dodge, supra, a much stronger case was made out in favor of the alleged contract than is made out by plaintiff in this case; yet this court held in that case that the alleged promise fell within the statute of frauds, and was therefore void.

While this disposes of the case, it may not be out of place at this time to remark that the defendant, Grant Wheatley, as a witness in his own behalf, denied, absolutely and positively, that he had ever had any such conversation with the witness W. S. Hepner as that witness had related on the stand, and denied that he had ever paid defendant for any goods sold or delivered to either of his sons, or that, to his knowledge, credit had been extended to either of his sons upon his account. In fact, there was such a conflict in the testimony that the disparity can be accounted for only upon the ground that one or the other of these witnesses was committing willful perjury, and it was for the prevention of just such unseemly situations as this in courts of justice that the statute of frauds and perjuries was originally enacted. The law recognizes certain cases where one party may be held liable upon an oral agreement made for the benefit of a third party; but such cases are an exception to the general rule, and such a contract should not be recognized unless the facts of the case bring it clearly within the exception, and the law ought not to be strained in order to include doubtful cases.

In this case, defendant's liability is predicated wholly upon what he said to W. S. Hepner in the alleged conversation, to-wit: "Let the boys have goods." "Let the boys have goods to any ex-

tent." "It would be all right to let the boys have goods." But the witness admitted that "he (meaning defendant) didn't just say he would pay for them." But the witness assumed that he meant that if he (witness) would let the boys have goods he would pay for them. But this assumption on the part of the witness is not a necessary inference to be drawn from what defendant said, for witness had no right to infer anything more than that defendant meant that, if plaintiff furnished the boys the goods, he would guarantee that they would pay for same, and certainly the jury had no right to assume anything more than this, in view of the fact that plaintiff's own testimony is to the effect that his son (to whom these statements were made) advised him (plaintiff) that the defendant guaranteed the payment.

Because of the insufficiency of the evidence to support the verdict, the order appealed from is reversed.