**BUILDERS SUPPLY COMPANY, INC., a corporation of Witten, South Dakota, Plaintiff and Appellant,**

v.

**Robert CARR, Defendant and Respondent.**

No. 12051.

Supreme Court of South Dakota.

Argued Dec. 2, 1977.

Decided March 1, 1979.

John J. Simpson, Winner, for plaintiff and appellant.

J. M. Grossenburg, of Day & Grossenburg, Winner, for defendant and respondent.

DUNN, Justice (on reassignment).

This case involves an action for foreclosure of a mechanic's lien and for judgment on a personal guaranty. Builders Supply Company, Inc. (Builders Supply), appeals from a judgment entered by the trial court on a jury verdict in favor of defendant Robert Carr (Carr). We affirm.

On November 1, 1974, Carr contracted with Robert Jones, d/b/a Artistan Masonry (Jones), for construction of a house upon land owned by Carr in Winner, South Dakota. Jones agreed to furnish all of the labor and materials for the house, and Carr agreed to pay $28,000 to Jones in three equal installments as follows: one-third upon completion of the footings or basement, one-third upon completion of the roof, and one-third upon completion of the entire project. Jones purchased the materials for the house from Builders Supply in Witten, South Dakota. All purchases by Jones were made by charging an open account in Jones' name. Charges were made by Jones on the Carr house project from November 6, 1974, to March 11, 1975.

By February 6, 1975, Carr had paid to Jones the first two installments due under the contract in the amount of $18,666.66. At this same time, Jones owed Builders Supply about $5,000 on open account on the Carr house project. Builders Supply and Jones signed an agreement wherein Jones promised to pay Builders Supply $5,000 out of the final installment of $9,333.33 due him upon completion of the Carr house. Representatives of Builders Supply discussed this agreement with Carr, and Carr orally agreed to withhold the $5,000 from the final installment payable to Jones upon completion of the house.

After the agreement between Builders Supply and Jones was entered into, Builders Supply continued to furnish materials to Jones. Jones then approached Carr three times in February for advances on the amount due upon completion of the house in order to meet his payroll demands, and Carr furnished advances totaling $1,650. On March 8, 1975, Jones again approached Carr for an advance of some $2,800 for payroll. This demand for an advance of $2,800 was getting into the last $5,000 of the final installment due Jones upon completion of the house, and Carr had orally agreed to withhold the final $5,000 for Builders Supply so Carr contacted Builders Supply for guidance. Carr testified that he got the approval of Builders Supply's court-appointed receiver, Leach, and its manager, Weatherman, to advance further amounts to Jones. Weatherman testified that he gave no such approval, while Leach testified that Carr did indeed call him and that if Weatherman said it was all right, then it was all right with him.

Builders Supply continued to furnish materials to Jones until March 17, 1975. By that time, Jones owed Builders Supply about $9,000. Builders Supply approached Carr and presented him with the bill. Carr testified that he advised Builders Supply at that time that if it would furnish what was needed to finish the project, he would pay for the materials. Builders Supply, however, did not extend further credit to Jones or supply more materials for the project based upon Carr's statement and filed a mechanic's lien against the Carr house on March 17, 1975, claiming a lien for the materials furnished to Jones. By April 6, 1975, Carr had advanced a total of $5,700 to Jones and his laborers for payroll expenses in addition to paying the first two installments of $18,666.66 due Jones. At that point in time, Jones defaulted on the contract by failing to complete the house project. Since the default, Carr has incurred an additional $9,200 in an effort to complete the project. This amounts to a total expenditure by Carr of approximately $34,000, plus Builders Supply's claim in this action for an additional $9,000 on a house which he had originally contracted to be built for $28,000.

On June 13, 1975, Carr made a written demand pursuant to SDCL 44-9-26 on Builders Supply to commence a suit to enforce the mechanic's lien it had filed. Builders Supply commenced this action seeking foreclosure of the lien and, alternatively, a personal judgment against Carr on

the theory that Carr guaranteed payment of Jones' account with Builders Supply. The trial court dismissed Jones as a third-party defendant prior to the jury trial because Jones could not be located and did not answer the third-party complaint against him.

On February 27, 1976, the trial court dismissed the lien foreclosure action of Builders Supply because the lien upon which the complaint was based did not contain an itemized statement of the account upon which the lien was claimed as required by SDCL 44–9–16. The trial court also granted a motion by Builders Supply to file an amended complaint, denied its motion to file a reply to Carr's answer, and denied its motion for summary judgment on the action for personal judgment on the theory of guaranty. The case was tried before a jury as to the portion of Builders Supply's complaint praying for personal judgment on the guaranty theory. The jury returned a verdict for Carr on August 13, 1976, and the trial court entered its judgment on the verdict on August 24, 1976. On September 7, 1976, the trial court denied a motion for a new trial and Builders Supply filed this appeal.

Builders Supply first contends that the trial court erred in granting Carr's motion to dismiss the lien foreclosure action and argues that such dismissal was not proper because no findings of fact or conclusions of law were entered by the trial court. The requirements for a valid lien statement include an itemized statement of the account upon which the lien is claimed. SDCL 44–9–16(7). The lien statement filed by Builders Supply contained lump sum dollar amounts as follows:

| | |
|---|---|
| Brick, mortar, sand and freight | $1,252.06 |
| Lumber-siding and flooring, plumbing, electrical, etc. | $7,784.23 |
| | $9,036.29 |

It can certainly be concluded that this does not constitute "[an] itemized statement of the account upon which the lien is claimed." See *Crescent Electric Supply Co. v. Nerison*, 1975, S.D., 232 N.W.2d 76. Builders Supply argues that it furnished a complete statement to Carr after commencement of this action pursuant to Carr's request for a bill of particulars. This is of no effect, however, because the statute requires an itemized statement to be filed with the register of deeds. That was not done in this case.

With regard to the lack of findings of fact and conclusions of law, we turn to SDCL 15–6–52(a) which states that findings of fact and conclusions of law are unnecessary on decisions of motions under SDCL 15–6–12 or 15–6–56 or any other motions. The record reveals that Carr specifically requested the trial court to treat his motion to dismiss the lien foreclosure action as a motion for judgment on the pleadings pursuant to SDCL 15–6–12(c). The trial court could properly treat the motion to dismiss as one for an order for judgment on the pleadings even though the motion was not in strict compliance with SDCL 15–6–12(c). *Thies v. Renner*, 1960, 78 S.D. 617, 106 N.W.2d 253. A motion to dismiss is an expeditious remedy to test the legal sufficiency of a pleading and deals only with questions of law arising thereon. *Akron Savings Bank v. Charlson*, 1968, 83 S.D. 251, 158 N.W.2d 523. It is a proper remedy only when no issue of fact is raised. *Hauck v. Bull*, 1961, 79 S.D. 242, 110 N.W.2d 506. Since the trial court had only to examine the lien statement which was attached to the complaint to decide whether the itemization was sufficient or insufficient pursuant to SDCL 44–9–16 and the *Crescent Electric Supply* standards, no issues of fact were decided; therefore, no formal findings of fact or conclusions of law were required, and the trial court did not err in granting the motion to dismiss the lien foreclosure action.

Builders Supply next contends that the trial court erred in refusing to allow its reply to Carr's amended answer. On July 26, 1976, Carr moved to file an amended answer to the amended complaint of Builders Supply and served a copy of the amended answer on counsel for Builders Supply. At a pretrial conference on the date of trial, the trial court accepted both the amended complaint and the amended answer. Carr's

amended answer affirmatively pled that the alleged oral guaranty was not in writing which rendered it unenforceable. Builders Supply sought leave of the trial court to reply to the effect that Carr was estopped from pleading such because Builders Supply relied upon the oral guaranty to its detriment. SDCL 15–6–7(a) states that the court *may* order a reply to an answer. This indicates that the order is discretionary. We have stated that ordinarily a reply is not necessary where the answer does not contain a counterclaim or where the court does not order a reply to be made. *Hauck v. Bull*, supra. This reasoning was applied in *Stenson v. Elfmann*, 1910, 26 S.D. 134, 128 N.W. 588, where this court stated that a plaintiff suing for specific performance of a contract to convey real estate did not have the right to file a reply setting up matters of estoppel where the answer was a general denial and a defense not constituting a counterclaim. In any event, Builders Supply is not unduly prejudiced by the trial court's refusal to allow the reply because the allegations in Carr's amended answer are to be treated as denied. SDCL 15–6–8(d). In fact, estoppel was constructively raised in the amended complaint of Builders Supply where it pled that there was an oral agreement between the parties and that it relied to its detriment on the agreement in furnishing the materials.

Builders Supply further contends that the trial court erred in giving an instruction on oral guaranties and in failing to give its proposed instructions. The instruction given by the trial court as to oral guaranties reads as follows:

"Ordinarily, a guaranty must be in writing and signed by the guarantor.

"If you find that the Defendant Carr gave no written guaranty then you must find for the Defendant Carr unless you find by a preponderance of the evidence:

"I. As to the merchandise delivered by the Plaintiff before the guaranty, if any, was made:

"1. That the Defendant Carr agreed with the Plaintiff to pay for the existing indebtedness of Robert Jones to the Plaintiff, *and,*

"2. A new and independent consideration of promise was made by the Plaintiff to the Defendant Carr's benefit, other than a mere agreement to continue to furnish labor or materials to Robert Jones.

"II. As to merchandise to be delivered by the Plaintiff after the guaranty, if any, was made:

"1. That the Defendant Carr promised to pay for the goods to be delivered and furnished by the Plaintiff to Robert Jones, *and,*

"2. That the Plaintiff parted with the goods and materials solely in reliance upon the oral promise of the Defendant Carr to pay therefore (sic) and on the strength alone of Defendant Carr's credit, without relying in any way upon the credit of Robert Jones."

The first part of the instruction properly states the law that guaranties usually must be in writing and signed by the guarantor as required by SDCL 56–1–4. Part I of the instruction properly states that with regard to materials furnished prior to the alleged guaranty there must be a promise and a consideration distinct from that of the original obligation because the guaranty was not entered into at the same time with the original obligation. SDCL 56–1–3. Part II of the instruction properly embodies one of the exceptions to the writing requirement found in SDCL 56–1–6. In essence, the exception states that where the creditor parts with value in reliance on the oral promise under circumstances which render the party making the promise the principal debtor, there need not be a writing. See *Cargill, Inc. v. American Pork Producers, Inc.*, 1977, D.C.S.D., 426 F.Supp. 499; *Atlas Lumber & Coal Co. v. Flint*, 1905, 20 S.D. 118, 104 N.W. 1046; *Meldrum v. Kenefick*, 1902, 15 S.D. 370, 89 N.W. 863. As counsel for Carr points out, this statutory exception substantially covers the subject matter of the proposed instruction as to equitable estoppel. The other proposed instructions are passages from annotations to the statutes cited above and are cumulative in nature.

We conclude that the trial court did not err in refusing to amplify the instructions given because they substantially covered the principles embodied in the proposed instructions. *Egan v. Sheffer*, 1972, 86 S.D. 684, 201 N.W.2d 174; *Jorgenson v. Dronebarger*, 1966, 82 S.D. 213, 143 N.W.2d 869.

■ Builders Supply finally challenges the sufficiency of the evidence to justify the jury verdict for Carr. Our review of the sufficiency of the evidence on appeal involves consideration of the evidence and inferences derived from the evidence in the light most favorable to upholding the verdict. *Engberg v. Ford Motor Company*, 1973, 87 S.D. 196, 205 N.W.2d 104. We will consider Builders Supply's evidence only insofar as it tends to amplify, clarify, or explain evidence in support of the jury verdict. *Nugent v. Quam*, 1967, 82 S.D. 583, 152 N.W.2d 371. If, when so viewed, there is competent and substantial evidence to support the verdict, then it must stand. *Vander Vorste v. Northwestern National Bank*, 1965, 81 S.D. 566, 138 N.W.2d 411.

The evidence in the record indicates that there were two separate oral promises made by Carr to Builders Supply. The first such promise was made in early February of 1975 when Carr agreed to withhold $5,000 of the final installment payable to Jones upon completion of the house pursuant to their contract. This promise was not breached by Carr because under the contract with Jones the final payment was not due until after the house project was completed. It is undisputed that the project was not completed and that Jones was in total default. The final installment therefore never came due, and Carr's conditional promise did not have to be honored. The evidence conflicts, however, as to approval from Builders Supply for Carr to advance further amounts to Jones for payroll purposes. This is inconsequential because of the conditional nature of the promise to withhold funds in Carr's hands payable in the future to the contractor, Jones.

The second oral promise made by Carr to Builders Supply is disputed. Builders Supply claims that Carr promised to pay for any future materials which Builders Supply delivered to Jones at the same time that he agreed to withhold the $5,000 from the final installment. Builders Supply claims that it delivered materials to Jones after and in reliance upon that promise by Carr. Conversely, the testimony of Carr and McPhee, the Builders Supply lumber yard and hardware store manager, indicates that the second oral promise was made sometime after the first promise and that no materials were delivered in reliance upon the second promise.

■ The basic issue presented to the jury in this action was whether the second oral promise was an original obligation or merely a collateral agreement. As this court stated in *Wood v. Dodge*, 1909, 23 S.D. 95, 120 N.W. 774:

"An oral promise to pay for goods furnished at the promisor's request to a third person is not valid if the transaction is wholly or partly upon the credit of the third person so as to create a debt against him to which the oral promise is merely collateral. If any credit whatever is given to the third person, so that he is in any degree liable, the oral promise of the other party is not valid. 29 Am. & Eng.Law (2d Ed.) 180, 181; 20 Cyc. 180, 181. In determining to whom, as between the promisor and the person for whose benefit the promise is made, the credit was actually given, an important consideration is the manner in which the creditor entered the transaction in his books. Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him and relied upon him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking. 20 Cyc. 183; 29 Am. & Eng. Ency.Law (2d Ed.) 924."

■ The record reveals that the Builders Supply accounts receivable were all in Jones' name and all materials were charged and billed out to Jones. It appeared that all the transactions were made upon the credit of Jones. Builders Supply had ex-

tended credit to Jones on other jobs in the past. There is an indication that Builders Supply extended credit to Jones with the idea that Jones would continue to bring his business to Builders Supply in the future. A further indication of reliance by Builders Supply on the credit of Jones is that the sole owner of Builders Supply stated to Leach, the court-appointed receiver for the business, that Jones was "all right" in response to Leach's expressed concern about the Jones account balance of $5,000. In fact, the owner of Builders Supply made a personal loan to Jones of $10,000 on January 20, 1975. A couple of days after this loan was made, Jones paid Builders Supply $3,000 on account. On January 27, 1975, Builders Supply permitted Jones to open an office in its building in Witten, South Dakota, to conduct his business. Further, Carr points to the Builders Supply affidavit of March 17, 1975, in the statement of claim for the mechanic's lien which states that Jones was the person for whom the materials were furnished. Carr claims that this is evidence that as of this late date Builders Supply still treated the bill as being owed by Jones and not by Carr.

There is disputed testimony regarding what promises in oral guaranty were made by Carr and when such promises were made. There is also conflicting evidence as to the degree of reliance by Builders Supply on the credit of Jones and as to whether Carr's promises were collateral in nature or whether the promises elevated Carr to the status of a principal debtor. In light of the standards of review of the sufficiency of a jury verdict as stated above, we must assume that all of these conflicts in the testimony were resolved in Carr's favor by the jury after due deliberation. *Hannahs v. Noah,* 1968, 83 S.D. 296, 158 N.W.2d 678. We conclude that there is competent and substantial evidence in the record to support the jury verdict. *Vander Vorste v. Northwestern National Bank,* supra.

We have considered the remaining contentions of Builders Supply as found in the assignments of error and find them to be without merit.

The judgment of the trial court based upon the jury verdict is affirmed.

MORGAN, HENDERSON and FOSHEIM, JJ., concur.

WOLLMAN, C. J., concurs specially.

WOLLMAN, Chief Justice (concurring specially).

I join in the majority opinion except that portion which holds that the lien statement filed by Builders Supply was insufficiently itemized. Our holding in *Crescent Electric Supply Co. v. Nerison,* S.D., 232 N.W.2d 76, must be read in the light of the lien statement involved in that case, a lien statement that was so totally lacking with respect to the requirements of SDCL 44–9–16 as to be not even arguably sufficient. More to the point is our holding in *Ringgenberg v. Wilmsmeyer,* S.D., 253 N.W.2d 197, which upheld as being in substantial compliance with the statute a lien statement that was no more detailed than the one in question here.

As I read appellant's brief, no claim is made that the trial court erred in ruling upon the validity of the lien statement, but only that the trial court erred in not entering findings of fact and conclusions of law with respect to defendant's motion to dismiss appellant's lien foreclosure action. I agree with the majority that the trial court did not err in not entering findings and conclusions. Accordingly, I join in the affirmance of the judgment.