Jack HANSEN, Plaintiff-Appellee,

v.

G.G.F. HOLDINGS, INC., and Enzo Casoli, Defendants-Appellants.

No. 14836.

Supreme Court of South Dakota.

Considered on Briefs Sept. 10, 1985.

Decided Oct. 30, 1985.

Thomas C. Barnett, Jr., of Kemnitz & Barnett, Philip, for plaintiff-appellee.

Ronald Clabaugh, of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants-appellants.

FOSHEIM, Chief Justice.

Enso Casoli (Casoli) appeals from a judgment rendered in favor of Jack Hansen (Hansen) which found Casoli personally guaranteed payment for certain foreign fur sales made by Hansen. We affirm.

Casoli is a fur buyer and salesman who resides in both Canada and Arkansas. Hansen owns Hansen's Hyde and Furs located in Philip, South Dakota.

In the fall of 1977, Casoli and Hansen entered into a business agreement whereby Casoli agreed to introduce Hansen to fur buyers from Italy. Initially, contacts with these buyers resulted in several successful business transactions with no payment problems. Testimony conflicted on the amount of the commission Hansen was to pay Casoli. The court found the agreed commission was 5% of certain sales for a total of $14,351.80.

Hansen's fur business was financed by a local bank. The bank required that the foreign sales be on a cash or letter of credit basis. After a series of successful transactions, Casoli proposed that Hansen ship furs to these customers with the understanding that payment would be received subsequently. Hansen and Hansen's banker, Charles Eckstrum, testified that Casoli gave his personal guarantee of payment before they accepted this new method of sales. Hansen thereafter shipped furs to Europe for which he received partial payment or no payment. Hansen testified that he attempted to contact Casoli to obtain payment. After failing to contact Casoli, Hansen wrote collection letters to the various European buyers. This produced some payment but substantial balances remained outstanding.

Hansen brought suit against Casoli and G.G.F. Holding, Inc., claiming Casoli was either the purchaser of, or had personally guaranteed payment, for the furs. The purchase claim did not prevail. Casoli disputes that he guaranteed payment and argues that he merely promised to attempt to collect from the Italian purchasers should they fail to pay Hansen. Hansen contends the record reveals Casoli was an unqualified personal guarantor. Casoli counterclaimed that Hansen owed him a commission on furs sold by Hansen to others in 1977 and 1978. The complaint against G.G.F. Holdings, Inc., was dismissed with prejudice. The case was tried to the court without a jury. Findings of fact and conclusions of law were entered by the court for Hansen and against Casoli in the amount of $33,946.26 and for Casoli and against Hansen on Casoli's counterclaim in the amount of $14,351.80.

The trial court found, inter alia, that Casoli had informed Hansen that his fur sales could be increased if he would ship the furs without prepayment and allow the purchasers a short period of time to make payment; that Hansen and his banker ex-

pressed concern to Casoli of the difficulty collecting in Italy should the purchasers fail to make payment; that Casoli represented to Hansen and his banker that Casoli personally knew the prospective purchasers, that Hansen would experience no problem receiving prompt payment, and that Casoli guaranteed payment; that prior to Hansen agreeing to ship furs without pre-payment, Casoli made an oral guarantee whereby he guaranteed payment for the fur sales; that Hansen relied on that guarantee; that in consideration of Casoli's oral guarantee Hansen parted with value by shipping furs; and that Hansen attempted to collect from the Italian purchasers.

The court concluded from these facts that Casoli was equitably estopped from raising a defense that the guarantee is unenforceable because it was not in writing. The court further concluded that Casoli's oral guarantee need not be in writing under SDCL 56-1-6 because Casoli made the oral guarantee, Hansen relied on it and parted with value, and that it was made under circumstances which rendered Casoli the principal debtor.

We are presented with the single issue of whether the trial court erred in finding Hansen's claim was not barred by the Statute of Frauds. Under SDCL 56-1-4, a guaranty [1] must be in writing to be enforceable. Several statutory exceptions are provided. Both parties concede that their business relationship has not been reduced to a writing. Thus, if the statute is applicable and no exception applies, Hansen's claim would be without merit.

In *Wood v. Dodge*, 23 S.D. 95, 120 N.W. 774 (1909), this court considered what is now SDCL 56-1-6 and established several guiding principals to which we have since adhered. In *Wood,* this court determined that an oral promise to pay for goods furnished at the promisor's request for a third person is generally not valid if the transaction is wholly or partly upon the credit of the third person so as to create a debt

against him to which the oral promise is merely collateral. *Id.* 120 N.W. at 775. In determining to whom the credit was actually given, as between the promissor and the person for whose benefit the promise is made, the book entry made by the creditor is an important consideration. Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to that person and relied upon him for credit. Therefore, a promise to be answerable for the debt of another may be, at most, a collateral undertaking. However, in *Wood* the court noted that book entries may be explained away and the presumption removed. *Id.* at 776.

■ The *Wood* decision identified several controlling factors. There was no evidence that the plaintiffs relied upon defendant's promise to furnish the goods; there was no evidence which offset the prima facie proof that credit was given to the third party as shown by the merchant's records; there was no evidence of any relationship between the third party and the defendant making it to the interest of the defendant that the goods be furnished to the third party.

■ These important factors identified but absent in *Wood* can all be found in this case. The record reveals testimony that Hansen and his banker relied upon Casoli's promises before they agreed to ship furs to Europe without pre-payment. Hansen was able to explain why his sale invoices and other business records did not indicate Casoli as a buyer, thus, rebutting the prima facie showing that credit was extended directly to the European buyers. Additionally, there was evidence that a business relationship existed between Casoli and the European buyers whereby it was to Casoli's interest that the furs be exported to them.

We therefore conclude the trial court did not err in determining Hansen's claim was not barred by the Statute of Frauds under

---

**1.** SDCL 56-1-1 defines guaranty as a promise to answer for the debt, default, or miscarriage of another person.

the SDCL 56–1–6 [2] exception. This conclusion finds comfort in past cases. *See, e.g., Federal Land Bank v. Matson,* 68 S.D. 538, 5 N.W.2d 314 (1942) (equitable estoppel may prevent a party to an oral agreement from invoking the Statute of Frauds); *McAdam v. Vallenthime,* 40 S.D. 277, 167 N.W. 171 (1918) (question is whether the promise relied upon preceeded the transaction or the guarantee was of a subsisting obligation of the third person); *Hepner v. Wheatley,* 34 S.D. 338, 148 N.W. 594 (1914) (question is whether goods would have been delivered absent any promise of defendant). In each case the expressions used, the situation of the parties, and all circumstances should be taken into consideration. *Atlas Lumber and Coal Co. v. Flint,* 20 S.D. 118, 120, 104 N.W. 1046, 1047 (1905). It must always be resolved by competent evidence whether the defendant became primarily obligated by promising "to be paymaster" or is only collaterally obligated by promising "to see [the plaintiff] paid." *Id.*

The most recent South Dakota case relating to SDCL 56–1–6 is *Builders Supply Co. v. Carr,* 276 N.W.2d 252 (S.D.1979). The *Wood* decision was followed. In *Builders,* accounts in the benefactor's name and evidence of reliance on the benefactor's credit tended to establish that the defendant was not liable for the account. The evidence conflicted as to what degree the plaintiffs relied on the defendant's promises and credit. *Id.* at 258. This court concluded that competent and substantial evidence in the record supported the trial court's conclusion. *Id.*

We too must assume that the often conflicting and sketchy testimony of both parties was resolved after careful deliberation by the trial court. *See Builders Supply,* 276 N.W.2d at 258. We must give due regard to the opportunity that the trial court had to judge the credibility of each witness in weighing the testimony. *Isaak v. Isaak,* 278 N.W.2d 445 (S.D.1979). *See also Nicolaus v. Deming,* 81 S.D. 626, 139 N.W.2d 875 (1966).

After reviewing the record, we are not left with a definite and firm conviction that the trial court erred. *Vaughn v. Eggleston,* 334 N.W.2d 870, 872 (S.D.1983). Accordingly, the decision of the trial court is affirmed.

All the Justices concur.

WUEST and HERTZ, Circuit Court Judges acting as Supreme Court Justices, participating.

---

2. Since we can affirm this decision under the trial court's statutory theory, we need not address the alternate general equitable theory identified by the trial court. *See, e.g., Sioux City Boat Club v. Mulhall,* 79 S.D. 668, 117 N.W.2d 92 (1962).