# WESTMORELAND v. UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF TEXAS.

No. 765. Submitted December 10, 1894. — Decided January 7, 1895.

An averment in an indictment for murder that the defendant is " a white person and not an Indian " is sufficient to show that he is outside of the first two clauses of Rev. Stat. § 2146.

An averment in an indictment that the defendant was not a citizen of the
Indian Territory will be sustained as a sufficient averment that he does
not come within the provisions of article 38 of the treaty of April 28,
1866, with the Choctaws and Chickasaws, 14 Stat. 769, 779, when no chal-
lenge of the indictment in this respect is made prior to the trial, and the
question is only made by motion in arrest of judgment.

A charge in an indictment which charges that the defendant administered
to the deceased strychnine and other poisons with the unlawful and felo-
nious intent to take his life, and that so administered they did have the
effect of causing death, is sufficient.

In charging the causing of death by poisoning, it is unnecessary to aver
that the poison was taken into the stomach of the deceased.

On June 16, 1894, the plaintiff in error was adjudged guilty
of the crime of murder by the Circuit Court of the United
States for the Eastern District of Texas, and sentenced to be
hanged. This sentence has been brought to this court for
review by writ of error. The record contains only the indict-
ment, the judgment, and the motion in arrest thereof. The
indictment charges —

"That one Thomas Westmoreland, a white person and not
an Indian, nor a citizen of the Indian Territory, late of Pick-
ens County, Chickasaw Nation, Indian Territory, in the dis-
trict and circuit aforesaid, on the fifteenth day of June in the
year of our Lord eighteen hundred and ninety-three, in Pick-
ens County, in the Chickasaw Nation, in the Indian Territory,
the same being annexed to and constituting a part of the said
fifth circuit, and annexed to and constituting a part of the
Eastern District of Texas for judicial purposes, and being
within the jurisdiction of this court, did unlawfully, fraudu-
lently, and feloniously, and with his malice aforethought, and
with certain drugs and poisons, to wit, strychnine and certain
poisons to the grand jurors unknown, then and there given
and administered by the said Thomas Westmoreland to one
Robert Green with the unlawful and felonious intent of the
said Thomas Westmoreland then and there to take the life of
him, the said Robert Green.

"And he, the said Thomas Westmoreland, did then and
there, by administering the said poison, as aforesaid, unlaw-
fully, knowingly, and feloniously poison him, the said Robert

Green, from the effects of which said poison he, the said Robert Green, did languish, and languishing did then and there die on the fifteenth day of June, A.D. eighteen hundred and ninety-three, and within a year and a day from said date.

" And the said grand jurors aforesaid, upon their oaths aforesaid, do say that upon the day aforesaid, at the place aforesaid, with said poison aforesaid, used as aforesaid, and in the manner aforesaid, the said Thomas Westmoreland did unlawfully, feloniously, and with his malice aforethought, kill and murder the said Robert Green. The said Thomas Westmoreland and he, the said Robert Green, being then and there white persons and not Indians, nor citizens of the Indian Territory, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States of America."

*Mr. C. L. Herbert* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

It is not denied that the Circuit Court for the Eastern District of Texas has jurisdiction over offences against the laws of the United States committed in that portion of the Indian Territory described in the indictment, Act of March 1, 1889, c. 333, § 17, 18, 25 Stat. 783, 786; but it is insisted that by section 2146, Rev. Stat., such jurisdiction does not " extend to crimes committed by one Indian against the person or property of another Indian, nor to any Indian committing any offence in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offences is or may be secured to the Indian tribes respectively," and that no indictment can be held sufficient which does not expressly negative the exceptions contained in this section. See also the Act of

May 2, 1890, c. 182, § 30, 26 Stat. 81, 94; *In re Mayfield*, 141 U. S. 107. The defendant and the deceased are described as "white persons, and not Indians, nor citizens of the Indian Territory." The first clause in section 2146 is taken from the twenty-fifth section of the Act of June ·30, 1834; c. 161, 4 Stat. 729, 733, and it was held in *United States* v. *Rogers*, 4 How. 567, 573, that adoption into an Indian tribe did not bring the party thus adopted within the scope of such exception, the court saying: "Whatever obligations the prisoner may have taken upon himself by becoming a Cherokee by adoption, his responsibility to the laws of the United States remained unchanged and undiminished. He was still a white man, of the white race, and therefore not within the exception in the act of Congress." The term "Indian" in section 2146 is one descriptive of race, and therefore the defendant, described as a white man and not an Indian, is shown to be outside the first two clauses of section 2146.

But it is insisted that article 38 of the treaty with the Choctaws and Chickasaws, of April 28, 1866, 14 Stat. 769, 779, provides that "every white person who, having married a Choctaw or Chickasaw, resides in the said Choctaw or Chickasaw nation, or who has been adopted by the legislative authorities, is to be deemed a member of said nation, and shall be subject to the laws of the Choctaw and Chickasaw nations according to his domicil, and to prosecution and trial before their tribunals, and to punishment according to their laws in all respects as though he was a native Choctaw or Chickasaw;" and that, therefore, the indictment should also negative the conditions of this article. But it is charged that the defendant and the deceased were not "citizens of the Indian Territory." Force must be given to this term in the indictment, and while it may be conceded that it is not the most apt to describe citizenship in an Indian tribe, yet it is not an unreasonable construction to hold that it refers to all citizenship which could possibly be acquired in the Indian Territory, including therein citizenship in any Indian tribe domiciled within such limits. At least, as no challenge was made of the indictment prior to the trial, and the question was only

raised by motion in arrest, and as, further, that which was intended is obvious, it is fair to rule that any merely technical defect in this language was cured by the verdict.

Again, it is objected that the indictment is insufficient in that it fails to allege that the defendant knew that that which he is charged to have administered to the deceased was a deadly poison, and also that the poison was taken into the stomach of the deceased. Neither of these objections is well taken. It is charged that he administered the strychnine and other poisons with the unlawful and felonious intent to take the life of the deceased, and that, so administered, they did have the effect of causing death. It matters not whether he knew the exact character of the strychnine or other poisons. It was murder if he unlawfully and feloniously administered any poison with the design of taking life, and that which he so administered did produce death. At the common law, though it was necessary to allege the kind of poison administered, nevertheless proof of the use of a different kind of poison was regarded as an immaterial variance. "If A. be indicted for poisoning of B., it must allege the kind of poison, but if he poisoned B. with another kind of poisoning, yet it maintains the indictment, for the kind of death is the same." 2 Hale P. C. 185; 2 Bishop Crim. Pro. §§ 514 and 555. So, also, it is unnecessary to aver that the poison was taken into the stomach of the deceased. The crime would be complete if the poison was by hypodermic injection, or otherwise, introduced into the body of the deceased, and affecting the heart, or other organ, caused the death. The indictment need not specify in detail the mode in which the poison affected the body, or the particular organ upon which its operation was had. It is enough to charge that poison was administered, and that such poison, so administered, caused the death.

These are all the objections made to the indictment, and as its sufficiency is the only question presented for consideration, it must be held that no error is apparent in the record, and the judgment is

*Affirmed.*