EGAN, Respondent v. SHEFFER, Appellant

(201 N.W.2d 174)

(File No. 10994. Opinion filed October 3, 1972)

**Willy, Pruitt, Matthews & Jorgensen, Acie W. Matthews,** Sioux Falls, for defendant and appellant.

**Davenport, Evans, Hurwitz & Smith, Carleton R. Hoy, Michael F. Pieplow,** Sioux Falls, plaintiff and respondent.

WOLLMAN, Judge.

This is an appeal from a verdict in favor of plaintiff for damages for personal injuries suffered in a one-car accident while plaintiff was riding in defendant's automobile as a guest.

Plaintiff and defendant became acquainted sometime in 1964 when they started attending Washington High School in Sioux Falls, South Dakota. They remained good friends during their high school days, during which time they visited each other's homes and drove each other's automobiles. After graduating from high school in the spring of 1967, plaintiff and defendant enrolled in Dunwoody Industrial Institute, Minneapolis, Minnesota, in the fall of that year where they shared an apartment with a friend from Sioux Falls, Timothy Boe, who was also attending the Institute. The three boys returned to Dunwoody Institute in the fall of 1968 after the summer vacation.

On November 26, 1968, plaintiff, defendant and Timothy Boe returned to Sioux Falls from Minneapolis for the Thanksgiving holiday with another young man from Sioux Falls who was also attending the Institute. During the course of the trip back to Sioux Falls, plaintiff and defendant made arrangements to meet that evening. In accordance with such arrangements defendant drove to plaintiff's home at approximately 8 p.m. on November 26th. From there the two drove to the Union Jack, a 3.2 beer tavern in Sioux Falls, where they drank some 3.2 beer. After staying at the

Union Jack for a short time, plaintiff and defendant drove to Charlie's Pizza House on south Minnesota Avenue in Sioux Falls and remained there until midnight, at which time the premises were closed for the evening. They were joined during the course of the evening by Timothy Boe and while the three boys were at Charlie's Pizza House they consumed 3.2 beer until closing time, with each boy drinking about an equal amount of beer. Defendant met his former girl friend at Charlie's Pizza House and had an argument with her sometime during the evening, which caused defendant to become quite upset.

After Charlie's Pizza House closed for the evening, plaintiff, defendant and Timothy Boe got into defendant's 1956 Chevrolet automobile. Timothy Boe sat in the back seat and plaintiff sat in the front passenger seat. In place of a stock engine, the car was powered by a 327 (presumably 327 cubic inch) engine which defendant, who was studying auto mechanics at Dunwoody Institute, had modified by installing some high performance parts which enable the car to accelerate more rapidly and to go faster. The car had a manually operated transmission with the hand gearshift on the floor. The speedometer did not work.

After entering the car plaintiff and defendant had some conversation about "burning out the cobs." Plaintiff testified that defendant jumped into the car, started the engine "* * * was just pumping the foot feed, just pumping the gas, and I asked him, more or less, like, well, it was just a thing between us, you know — 'What are you going to do, burn the cobs out?' And he shoved it in first gear, and rammed through all three gears * * * * ". On cross-examination, plaintiff testified that after defendant had jumped into the car and revved up the engine plaintiff asked him, "Did you burn out the cobs?" Plaintiff conceded that "to burn out the cobs" means to spin the tires and to drive at a high rate of speed and that he knew that defendant would drive at a high rate of speed.[1] Defendant testified that after they got into the car plaintiff said, "Let's go burn the cobs out of it." Defendant testified that this expression means to clean out the engine and go fast.

---

1. Because of the injuries he suffered in the accident plaintiff had a very limited recollection of the events that occurred on the night of the accident.

Immediately after this conversation defendant drove south on Minnesota Avenue past the Barrel Drive-In. Plaintiff testified that he saw defendant's former girl friend sitting with another boy in an automobile at the Barrel Drive-In and that he jested with defendant about the fact. Defendant testified that he did not see his former girl friend at the Barrel Drive-In and did not recall hearing any conversation from plaintiff about the former girl friend.

As defendant drove away from where he was parked near Charlie's Pizza House he accelerated rapidly and did not slow down as he drove south on Minnesota Avenue. A witness testified that as he was preparing to turn on to south Minnesota Avenue from 41st Street on a green light defendant's automobile ran through the intersection against the red light at a speed of approximately 60 miles per hour between the witness' car and another car which had almost completed its turn on to Minnesota Avenue from 41st Street, narrowly missing both automobiles. Defendant lost control of the automobile on the curve on the top of the hill on south Minnesota with the result that the automobile skidded around, hit an embankment and turned over.

Timothy Boe testified that when the car reached the bottom of the hill on south Minnesota Avenue, "I heard him [plaintiff] call Dan's name. I heard him yell, 'Sheffer,' and then he leaned over and then the ignition on the car went off and back on again and after that I blacked out because by then we were at the top of the hill and that's — [when the accident happened]".

Defendant was familiar with south Minnesota Avenue, as was plaintiff. He testified that he had no idea whether he stopped at the stoplight at 33rd and Minnesota or whether the light there was red or green. He testified that he didn't stop for the stoplight at 41st and Minnesota, but stated that he could not remember what color that light was either. He testified that he couldn't remember whether plaintiff or Timothy Boe had ever advised him to stop or slow down. Defendant pleaded guilty to and paid a fine on a charge of reckless driving filed as a result of the driving that led to the accident.

■ Defendant argues that the accident was not caused by willful and wanton misconduct in that plaintiff and defendant were engaged in a joint venture, namely, driving at a high rate of speed, with the corresponding thrills relative thereto, and that there could be no willful and wanton misconduct on defendant's part because of the acquiescence on the part of plaintiff. We believe that the evidence does not indicate a joint enterprise or joint venture between plaintiff and defendant in the operation of defendant's automobile at the time of the accident. Zeigler v. Ryan, 65 S.D. 110, 271 N.W. 767; Fredrickson v. Kluever, 82 S.D. 579, 152 N.W.2d 346; Miller v. Baken Park, Inc., 84 S.D. 624, 175 N.W. 2d 605.

■ The evidence was sufficient to support the jury's finding that defendant was guilty of willful and wanton misconduct as defined in our earlier decisions. See, e. g., Melby v. Anderson, 64 S.D. 249, 266 N.W. 135; Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695. The evidence here was stronger than it was in Brewer v. Mattern, 85 S.D. 356, 182 N.W.2d 327, inasmuch as defendant drove a car, personally modified by him to accelerate rapidly and go at a high rate of speed, at least 60 miles per hour at night through at least one stoplight on a busy thoroughfare with which he was familiar, narrowly missing other automobiles that had the right-of-way over him.

■ Defendant contends that plaintiff assumed the risk of riding in defendant's automobile. The jury was properly instructed as to the defense of assumption or risk. There was competent evidence to support the jury's finding that plaintiff had not assumed the risk of injury. Viewing the evidence in the light most favorable to the plaintiff, we cannot say as a matter of law that plaintiff assumed the risk. Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695; Jennings v. Hodges, 80 S.D. 582, 129 N.W.2d 59.

Defendant contends that plaintiff brought his injury upon himself by his willful act or want of ordinary care and is barred from recovering by SDCL 32-34-2, which provides that:

"No person transported by the owner or operator of a motor vehicle as his guest without compensation for

such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, if he has willfully or by want of ordinary care brought the injury upon himself."

Defendant argues that the court erred in refusing to instruct the jury on the issue of plaintiff's contributory negligence, citing Stoll v. Wagaman, 73 S.D. 186, 40 N.W.2d 393, where this court said that SDCL 32-34-2 (then SDC 44.0362) means that contributory negligence of the plaintiff is a defense in a host-guest case.

The court instructed the jury generally in the words of the guest statute, SDCL 32-34-1. Defendant's request that the court instruct the jury that plaintiff could not recover if he had willfully or by want of ordinary care brought the injury upon himself, SDCL 32-34-2, was refused. We conclude that the defendant did not suffer prejudice by reason of the court's refusal to give the requested instruction. The evidence did not warrant an instruction that defendant could not recover if he had willfully brought the injury upon himself. Defendant's argument that it was plaintiff who promoted the operation of the automobile at a high rate of speed is premised on the testimony that after defendant had pumped the accelerator on the automobile, plaintiff either said, "What are you going to do, burn the cobs out?" or, "Let's burn the cobs out of it."

While it is true that the trial court is under a duty to instruct the jury on applicable law where the theory of law is supported by competent evidence, Zakrzewski v. Hyronimus, 81 S.D. 428, 136 N.W.2d 572, Miller v. Baken Park, Inc., 84 S.D. 624, 175 N.W.2d 605, it is not error to refuse to amplify instructions given which substantially cover the principle embodied in requested instructions. Peters v. Hoisington, 72 S.D. 542, 37 N.W. 2d 410; Jorgenson v. Dronebarger, 82 S.D. 213, 143 N.W.2d 869. Assuming arguendo that defendant's version of the events is correct and that plaintiff did say, "Let's burn the cobs out of it", it does not follow that defendant was prejudicied by the court's failure to give the requested instruction. As we have said, this con-

duct on the part of plaintiff would not warrant a finding that he willfully brought the injury upon himself.[2] Moreover, if it were considered a species of negligence or want of ordinary care, we think that it was sufficiently presented to the jury as a defense under the court's instruction on assumption of risk in the light of the particular acts specified as constituting want of ordinary care.

■ Defendant contends that the court should have instructed the jury that plaintiff could recover only for conscious pain and suffering and that the court erred in instructing the jury that the plaintiff's claimed elements of damage included "The pain, suffering, and mental anguish experienced and reasonably certain to be experienced in the future as a result of the injury * * * ". Plaintiff testified that he had no recollection of suffering pain for a considerable length of time; however, one of plaintiff's witnesses, a patient in the same hospital room, testified that on the second or third day of plaintiff's hospitalization plaintiff complained about suffering head pains. Although it would have been proper for the trial court to have stated in express words to the jury that damages could only be awarded for conscious pain, the effect of the instruction given was to tell the jury that plaintiff could recover only for the pain of which he was conscious, i. e., that which he experienced. Plank v. Heirigs, 83 S.D. 173, 156 N.W.2d 193.

■ Finally, defendant contends that the verdict of $8,500 is excessive and was given under the influence of passion and prejudice in view of the fact that the total special damages incurred by plaintiff amounted to only $1,532.92, with no claim being made for loss of wages.

Plaintiff, who was 19 years old at the time of the accident, suffered a cerebral contusion and a fractured left wrist as a result of the accident and was hospitalized from November 28th to December 23, 1968. When he was first brought to the hospital plaintiff was comatose and remained that way for several days,

2. We have disregarded the evidence that plaintiff may have jested with or taunted defendant about his former girl friend as they drove past the Barrel Drive-In inasmuch as defendant did not recall any such conversation and presumably was not influenced by it.

692

during which time he had periods of consciousness and then lapsed again into unconsciousness. After four or five days he became responsive to the point where he was bellicose in his actions to the extent that it became disturbing to the other patients and required the hospital staff to move him to a closed psychiatric ward where he could be watched more closely and where there would be specialized help to attend him. During this time plaintiff was not conscious of his behavior, actions and mannerisms. The neurosurgeon who was called in consultation to assist plaintiff's regular physician testified that plaintiff's intractable behavior resulted from the brain injury he had received in the accident. As plaintiff began to improve it became apparent to the neurosurgeon that he had some difficulty controlling his right arm and leg and had some trouble with his balance. Plaintiff was started on physiotherapy to try to help the return of function in the right extremities. At the time of his last examination by the neurosurgeon on January 8, 1971, plaintiff still experienced some mild sensory loss in the lower extremity on the right side which manifested itself in increased reflexes and in increased tone and awkwardness in the right leg. The neurosurgeon testified that this neurological deficit will be permanent. Plaintiff also has some mild scoliosis, or curvature, in the dorsal spine as a result of the accident. Plaintiff testified that he suffers from loss of balance and from nervousness, that his right leg tightens up and that he acquires a noticeable limp when the weather is chilly and that he experiences a tremor in his arm as a result of the fracture of the wrist. Plaintiff testified that he is no longer able to participate in sports such as softball and basketball. All things considered, we conclude that the damages awarded were not excessive and were not actuated by passion and prejudice. Plank v. Heirigs, supra; Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597; Schuler v. City of Mobridge, 44 S.D. 488, 184 N.W. 281.

Affirmed.

HANSON, P. J., and BIEGELMEIER and DOYLE, JJ., concur.

WINANS, J., dissents.

WINANS, Judge (dissenting).

I dissent and will state my reasons without elaboration. In Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695 (1960), the question of whether the defendant was entitled to an instruction on the issue of plaintiff's contributory negligence under what is now SDCL 32-34-2 was taken care of by this court's statement, "It so clearly appears that the substance of defendant's request appears in the court's instructions dealing with the defenses of contributory negligence and assumption of risk, and, read as a whole, that the court's instructions fairly submitted those issues to the jury". Nowhere in this case does the court take care of the defense of contributory negligence and I lean to the view that defendant was entitled to the requested instruction. It is a defense under the law specifically provided for by the statute. Assumption of risk which was taken care of by the court is not a substitute for and neither does it necessarily embrace the same law theories as does contributory negligence. In Harper and James, The Law of Torts, Vol. 2, § 22.2, at page 1201, we find the following:

> "Contributory negligence has sometimes been thought to be no more than an aspect of assumption of risk, so that plaintiff is barred from recovery under the maxim volenti non fit injuria. This explanation, too, would warrant the rule in its present form, as a complete bar to plaintiff's action. The two notions, however, do not cover the same ground and in many situations do not even overlap, though they may. Assumption of risk involves the negation of defendant's duty; contributory negligence is a defense to a breach of such duty. Assumption of risk may involve perfectly reasonable conduct on plaintiff's part; contributory negligence never does. Assumption of risk typically involves the voluntary or deliberate incurring of known peril; contributory negligence frequently involves the inadvertent failure to notice danger. Only confusion can come from failure to keep separate these two strands of legal doctrine."

See Annot., 82 A.L.R.2d, beginning at page 1218.

The difference between the conduct of the driver of the car and his guests in this case is that the driver had hold of the

steering wheel and it was his foot upon the gas pedal. Of course this is an important difference, but all were drinking and if drinking was an important issue on which to base willful and wanton conduct on the part of the defendant driver, it ought at least be important enough on which the jury might find contributory negligence on the part of the plaintiff when coupled with the other facts of this case. The speed with which the automobile was traveling does not appear to have been anything the plaintiff was particularly concerned about and as a matter of fact I think he actively gave his approval to it, "What are you going to do, burn the cobs out?" or "Let's burn the cobs out of it". The plaintiff did not appear to have remonstrated with the defendant driver about going through the stoplights on a busy thoroughfare with which they were all familiar, narrowly missing other automobiles that had the right-of-way over the driver. It is plain to me from the record that this was just a thrill ride in which all of the parties were engaged and some injuries occurred, and I think injury could have been expected to occur and under these circumstances in order to uphold this verdict the defense was entitled to the requested instruction.