Harold KREAGER,

v.

BLOMSTROM OIL COMPANY, a corporation, and Texaco, Inc., a corporation,

Nos. 14805, 14823.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1985.

Decided Dec. 11, 1985.

David J. Larson, of Larson, Sundall, Larson, Schaub & Fox, Chamberlain, for plaintiff and appellant.

Donald E. Covey, Winner, for appellee Blomstrom Oil Co.

John L. Morgan, of Morgan, Fuller, Theeler & Cogley, Mitchell, for appellee Texaco, Inc.

WUEST, Acting Justice.

Appellant Harold Kreager (Kreager) appeals from a judgment following a jury verdict in favor of appellee Blomstrom Oil Company (Blomstrom), and from a directed

verdict granted in favor of appellee Texaco, Inc. (Texaco). We affirm.

On July 26, 1977, Kreager's crop-dusting plane crashed during an attempted emergency landing, necessitated by engine failure during takeoff from his private airstrip in Kennebec, South Dakota. Although the plane received extensive damage, Kreager was unharmed.

The plane was examined by an aircraft mechanic shortly after the accident and water was found in its left wing tank. Kreager testified that he put fuel in the left wing tank on the morning of the accident. The fuel was taken from his front storage tank, a 1,000-gallon tank purchased new in March of that year. Kreager further testified that he checked the front storage tank after the accident and found water in the filter cartridge, hose, and tank itself.

The front storage tank lay on its side and was mounted on skids. It was equipped with a pressure vent on top, through which it was filled; a pump that reached to within two and one-half to three inches of the tank's bottom; and, a drain plug at the bottom. The vent cap was padlocked to the pump assembly, which could be screwed out with a wrench.

The only party known to have placed anything in Kreager's front tank near the time of the accident was Blomstrom's delivery man, Robert Bolander, who filled the tank on July 21, 1977, just a few days before the accident. Kreager testified that the fuel he put in his left wing tank just prior to the accident was the first fuel taken from that delivery. He further stated that he was on the ground at the time the fuel arrived, but left to finish a spraying job while the fuel was being unloaded. That was the last time he flew the airplane until the day of the accident. Between the date of the delivery of the fuel on July 21 and the date of the accident on July 26, the area had received 1.65 inches of rain with strong winds.

At the time of the accident in question, Blomstrom was a distributor of gasoline, diesel, and aviation fuel manufactured by Texaco. Blomstrom owns a bulk storage facility in Winner, South Dakota, which consists, in part, of a 10,000-gallon metal tank for aviation fuel.

The Blomstrom tank was a large horizontal, two-compartment tank, situated in a north-south direction, with the aviation fuel compartment located on the southern end. This compartment had four openings: a large opening on the top through which it was filled; a smaller opening through which the level and contents could be checked by means of a stick; a drain through which water or sediment could be drawn off; and, the opening through which the fuel was drawn when loaded into the delivery truck. The latter opening was located on the bottom of the tank and had a pipe protruding into the tank approximately one to one and one-half inches, below which level the fuel could not be drawn.

Water commonly forms in storage tanks through condensation from the atmosphere. Water and fuel separate, and because water is heavier it goes to the bottom of the tank. Blomstrom testified that it was company practice to run off any water which may have formed through condensation over the winter by opening the drain in the bottom of the storage tank.

On July 11, 1977, Blomstrom delivered fuel to Rosebud Aviation in Gregory, South Dakota. That delivery emptied Blomstrom's aviation fuel storage tank except for approximately one inch of fuel at the bottom of the tank, which could not be removed because of the design of the dispersing pump intake. No complaints were received from Rosebud Aviation concerning water in the fuel delivered.

On July 13, a large transport carrying 8,000 gallons of aviation fuel from Texaco arrived at Blomstroms. When a transport of aviation fuel was unloaded at Blomstrom's storage facility, it was the practice that each compartment of the transport, usually five compartments, was inspected for the presence of water by draining a small amount of fuel from each compartment into a bucket. Although no one could

recall with certainty whether the July 13 shipment was checked in this manner, Lloyd Blomstrom, principal owner of Blomstrom Oil, testified that the procedure was always followed.

While the transport was unloading on July 13, Blomstrom was also delivering 1,005 gallons of fuel to Western Aviation at the municipal airport in Winner and 375 gallons to Gateway Aerial Sprayers of Winner. There were no reported problems with water in either of these deliveries.

Kreager testified that on the day of the accident he put ten gallons of fuel in the left wing tank to bring it to the same approximate level as the right wing tank. When he checked the airplane after the accident, he found water in the left wing tank and the header tank through which the fuel went from the wing tanks to the engine. The water in these tanks was detected through running it out of the sump onto the palm of the hand. Later, the storage tanks were checked and water was found in the front storage tank, but none was found in the back tank nor in Kreager's truck tank. All of these tanks had been filled by Blomstrom on July 21.

In the front tank, water was found in the nozzle and filter, and approximately a week later water was drained out of the left wing tank. The water found was described as rusty and dirty, with particles floating in it. Lloyd Blomstrom testified that water or fuel, as so described, would not pass through the filters on the company delivery truck.

Kreager reported the accident and the water in his fuel tank to Blomstrom shortly after the accident. When he received the message, Lloyd Blomstrom checked the aviation fuel storage tank, using a measuring stick with litmus paste, a water-detecting substance, on the end of the stick. The delivery man made the same check and Blomstrom brought Donald Bice of Western Aviation in to make the same check. These checks indicated moisture at a depth of less than an eighth of an inch. Blomstrom checked with their other customers, Western Aviation, Gateway Aerial, and Rosebud Aviation, and none had water in their fuel tanks.

Kreager sued on a theory of strict liability, claiming a defect in the aviation fuel sold to him by Blomstrom, which had been manufactured by Texaco. The case was tried before a jury and, after the close of Kreager's case-in-chief, the trial court granted Texaco's motion for directed verdict. Thereafter, the jury returned a verdict in favor of Blomstrom and judgment was rendered thereon. On appeal, Kreager contends: (1) that the trial court erred in denying a specific jury instruction proposed by Kreager; and (2) that, under the evidence, the trial court erred in granting Texaco's motion for directed verdict. We disagree.

Kreager argues that the trial court committed prejudicial error by refusing his proposed jury instruction, which stated that he was not required to eliminate all other possible explanations of causation regarding the accident in question. Kreager cites *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 256 (S.D.1976), for this proposition, wherein this court stated: "We do not require that plaintiff eliminate all other possible explanations of causation that the ingenuity of counsel might suggest. It is sufficient that plaintiff negate his own and others' misuse of the product." (*Citing Daleiden v. Carborundum Co.*, 438 F.2d 1017 (8th Cir.1971); *Friedman v. General Motors Corporation*, 43 Ohio St.2d 209, 331 N.E.2d 702 (1975).)

█ When a proposed theory is supported by competent evidence, the trial court must instruct the jury on the applicable law, and failure to so instruct constitutes prejudicial error. *Rosenberg v. Mosher*, 331 N.W.2d 79 (S.D.1983); *Atyeo v. Paulsen*, 319 N.W.2d 164 (S.D.1982); *Miller v. Baken Park, Inc.*, 84 S.D. 624, 175 N.W.2d 605 (1970). But as we stated in *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D.1979):

It is not error, however, to refuse to amplify instructions given which substantially cover the principle embodied in

the requested instruction. *Egan v. Sheffer*, [86 S.D. 684, 201 N.W.2d 174 (1972)]; *Jorgenson v. Dronebarger*, 82 S.D. 213, 143 N.W.2d 869 (1966); *Peters v. Hoisington*, 72 S.D. 542, 37 N.W.2d 410 (1949). Instructions are adequate when, considered as a whole, they give a full and correct statement of the applicable law. *Mueller v. Mueller*, 88 S.D. 446, 221 N.W.2d 39 (1974); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958).

■ To recover under a theory of strict liability, the plaintiff must prove by a preponderance of the evidence that the product was defective when delivered. *Smith v. Smith*, 278 N.W.2d 155 (S.D.1979); *Schaffer v. Honeywell, supra; Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973). The existence of a defect may, of course, be established by circumstantial evidence. *Fajardo v. Cammack*, 322 N.W.2d 873 (S.D.1982). The trial court's instructions in the instant action adequately and fairly stated these rules of law.

In accord with the general rule, the trial court instructed the jury that the "party who asserts the affirmative of an issue must prove it by the greater weight of the evidence." Further, the court instructed the jury that the burden was upon Kreager to prove that the defect existed at the time the aviation fuel left Blomstrom's control. Finally, the court explained that direct and circumstantial evidence is accorded equal weight stating:

> As a general rule, the law makes no distinction between direct and circumstantial evidence as a means of proving a fact, but simply requires that the jury find the facts in accordance with the greater weight of all the evidence in the case, both direct and circumstantial.

■ Following the instructions, as given, the jury was free to consider all the evidence, both direct and circumstantial, concerning the cause of the water in Kreager's tank. Nothing in the court's instructions prevented the jury from discarding the theories proffered by Blomstrom as being less probable than Kreager's theory. We believe that, when taken as a whole, the instructions given by the trial court in the instant action constituted a full and correct statement of the law.

■ Kreager's final argument is that the trial court erred in granting Texaco's motion for directed verdict. When faced with such a motion, the evidence before the trial court is to be viewed in a light most favorable to the party against whom the motion is made, and the evidence supporting the position of the nonmoving party must be accepted as being true. Further, the court must indulge all legitimate inferences that the evidence might suggest in favor of the party against whom the motion is brought. *Ziebarth v. Schnieders*, 342 N.W.2d 234 (S.D.1984); *Langdon v. Reuppel*, 81 S.D. 289, 134 N.W.2d 293 (1965); *Myers v. Quenzer*, 79 S.D. 248, 110 N.W.2d 840 (1961).

When the trial court granted Texaco's motion for directed verdict, it indicated that there was no evidence that the water found in Kreager's fuel tank was present in the fuel when Texaco had possession, and that reasonable men could not differ that the proof failed to establish that the fuel was defective when it left the hands of Texaco. "Upon our review of the trial court's directed verdict for defendant, we note that the trial court rulings and decisions are presumed to be correct, and this court will not seek reasons to reverse." *Nelson v. Schroeder Aerosports, Inc.*, 280 N.W.2d 107, 108 (S.D.1979).

Now summarized, Kreager's evidence shows his airplane had water in the gas tank after the crash. His front storage tank, the hose thereto and filter cartridge, contained water after the accident. Prior to the accident, Kreager had emptied all the fuel from the front storage tank, which was then filled by the Blomstrom delivery truck. Blomstrom's delivery truck was checked by the delivery man prior to filling it from Blomstrom's storage tank. Testimony shows the delivery truck was free of contaminants prior to filling for delivery. Blomstrom emptied its storage tank prior to delivery by Texaco, so it did not have

any water in it at the time of delivery by Texaco, unless it was below the pumping mechanism. Shortly after the accident, Blomstrom's storage tank was checked for water and none was found, except on the bottom, which was too far below the pumping mechanism to be drawn out. Water quickly settles to the bottom as it is heavier than gasoline. The delivery truck was filled for delivery to Kreager several days after the Texaco delivery.

When Texaco's fuel was delivered to Blomstrom, it was the practice to test the fuel from the transport for the presence of water before it was pumped into the storage tank. While it was not established with certainty that this was done in the instant case, Blomstrom's delivery man testified that he handled ninety percent of the fuel shipments that arrived and he would have followed the usual practice. The water in Kreager's tank was described as rusty and dirty. Blomstrom testified the fuel delivered from Texaco was free of any defect.

■ No water was ever found in later deliveries of this particular shipment of aviation fuel from Blomstrom's storage tank. Viewing Kreager's evidence in a light most favorable to him, it merely provides speculation as to the water's source. This is insufficient. Kreager must prove the defect existed upon delivery, by a preponderance of the evidence, which may, of course, be proven by circumstantial evidence. The jury, however, cannot be permitted to play roulette as to the source of the water.

We affirm the trial court.

FOSHEIM, C.J., HERTZ, Acting J., and DOBBERPUHL, Circuit Judge, concur.

HENDERSON, J., concurs in part and dissents in part.

DOBBERPUHL, Circuit Judge, sitting for MORGAN, J., disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur on the affirmance of the directed verdict in favor of Texaco. Appellant's brief relies upon *Pearson v. Franklin Laboratories, Inc.*, 254 N.W.2d 133 (S.D.1977), and *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D.1976), for this contended proposition: that in the *Pearson* case, plaintiff was unable to show the condition of the product in the hands of the manufacturer and was unable to point to any particular defect in the product (*Pearson* was a breach of warranty case); that in *Pearson*, plaintiff had to show nothing more than the circumstances surrounding the product at the time the product came into plaintiff's hands. In different vernacular, this appellant, as regards Texaco, maintains that evidence having been introduced that the gasoline was defective, the burden of establishing that the product was not defective while in their possession, should be shifted to the manufacturer and dealer. South Dakota does not follow this rule but other states do. We adopted the doctrine of strict liability in *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973). We have consistently held that the plaintiff has the burden of proving that the defect existed while the product was in the possession and control of the defendant. *Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31 (S.D.1983); *Shaffer*, 249 N.W.2d 251; and *Sweetman Constr. Co., Inc. v. Dakota Pump*, 88 S.D. 650, 226 N.W.2d 792 (1975). It is true that appellant could establish the existence of a defect in the hands of Texaco by circumstantial evidence. However, as the trial court noted, there was no evidence brought forward which established that Texaco caused water to exist in the gasoline. There was no proof that when the gasoline left the possession of Texaco the product was defective, i.e., water in the gasoline. Therefore, the trial court properly granted a directed verdict against the appellant and in favor of Texaco.

I would reverse the decision of the trial court and call for a new trial as regards appellee Blomstrom Oil Company. I would do it based upon the fact that the plaintiff was entitled to have his proposed instruc-

tion # 17 given to the jury.* This proposed instruction was vital in view of the unfair solar plexis blows rendered by Blomstrom Oil Company unto Kreager during this trial; and, particularly, final arguments by counsel for Blomstrom Oil which vigorously contended that the source of water in the gasoline could possibly have been inserted by vandals. There was no evidence of any vandals placing water into the gasoline and this was improper argument as it was not based upon evidence in the record. Also, in cross-examination, counsel for Blomstrom Oil, by inference and innuendo, tried to get across in front of the jury that the water got into the fuel via rainwater or deliberate vandalism. Counsel for Blomstrom Oil extensively argued, in closing argument, that anyone could have taken the top off and put water, mud, sand, or whatever they wanted to "in there." Responding to the inference and innuendo in cross-examination, and its impact before the jury, counsel for plaintiff proposed instruction # 17. Relying upon the language in *Shaffer*, plaintiff's counsel requested an instruction to the effect that although the burden of proving causation falls upon the plaintiff, it does not require that the plaintiff eliminate all other possible explanations of causation. To blunt the damaging remarks of Blomstrom Oil Company's counsel, the instruction should have been given. Simply put, it should have been given to be fair. Trials are about fairness. They are about making people play by the rules. Counsel for Blomstrom Oil did not play by the rules and counsel for plaintiff tried to mitigate the highly prejudicial remarks. In effect, I am saying that the inference and innuendo in cross-examination, totally unproven by evidence, demanded some type of instructional force such as the language found in *Shaffer* and which plaintiff's counsel professionally researched and advocated in good workmanlike manner. Plaintiff found himself fighting a phantom vandalism opponent. If plaintiff would have received the requested instruction, he could have commented upon it, and tried to soft-

en the solar plexis blows. No instruction addressed, specifically, the point which I have addressed; thus, the instructions did not *fairly* embody the issues of law. There was prejudicial error on the instructions. A good judge in a trial is like a good referee in a basketball game; when he sees a foul committed, he blows the whistle and tries to right the wrong. No whistle here.

---

* This issue does not involve appellee Texaco.