STATE of South Dakota, Plaintiff
and Appellee,

v.

Richard Norman ST. CLOUD,
Defendant and Appellant.

No. 16966.

Supreme Court of South Dakota.

Argued Oct. 24, 1990.

Decided Jan. 9, 1991.

Rehearing Denied Feb. 15, 1991.

John P. Guhin, Deputy Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Steven K. Rabuck of Andera, Rabuck & Smith, Chamberlain, for defendant and appellant.

SABERS, Justice.

St. Cloud was convicted in state court of rape and kidnapping. He appeals his conviction, claiming lack of jurisdiction, faulty jury instruction and insufficient evidence. We affirm.

## Facts

St. Cloud is a resident of the Lower Brule Sioux Indian Reservation who participated in the tribe's alcoholic treatment program. On April 16, 1986, he appeared in a disheveled state at the tribe's alcoholic treatment center in Lower Brule village and met with a counselor he knew there. The counselor, a non-Indian woman, offered him a ride to his friend's nearby house because she did not want him at the center in his unkempt condition.

When St. Cloud's friend was not at home, he suggested that the counselor take him to "Iron Nation," a place unfamiliar to her. After driving about five miles, she became nervous, told him she had to get back to work and placed her hand on the gear shift in order to turn around. St. Cloud placed his hand on top of hers and said, "Just keep driving." She complied until the car reached Iron Nation, an abandoned church compound in an isolated area of the reservation some ten miles west of Lower Brule village. She stopped the car at the fence in front of the compound. St. Cloud pulled out a knife and began to make sexual advances. He took her car keys, got out of the car and opened the gate. He returned to the car, ordered her to drive into the enclosure and closed the gate behind the car. He broke the chained door of a house in the compound and took her inside, where he raped her. Afterwards he permitted her to leave in her car alone.

St. Cloud pled guilty in federal district court to a charge of involuntary sodomy under the Major Crimes Act, 18 U.S.C. § 1153 (1988), and SDCL 22–22–1(1) and 22–22–2. He was sentenced to twenty-five years imprisonment. Following sentencing, he filed a motion to set aside under 28 U.S.C. § 2255 (1988), arguing lack of subject matter jurisdiction because he claimed not to be an Indian for purposes of federal criminal jurisdiction. The federal district court granted his motion and released him to the custody of the South Dakota Attorney General.

In state court, he pled not guilty to charges of first-degree rape under SDCL 22–22–1(1) and kidnapping under SDCL 22–19–1. A jury found him guilty on both counts in December, 1989, and the court sentenced him concurrently to twenty-five years imprisonment for rape and sixty years imprisonment for kidnapping.

On appeal, he (1) attacks the jurisdiction of the state court, now arguing that he *is* an Indian within the meaning of the Major Crimes Act and that the federal court therefore has exclusive jurisdiction.[1] He also claims (2) error in a jury instruction on kidnapping, and (3) insufficient evidence to sustain his convictions on rape and kidnapping.

## 1. *Jurisdiction*

We do not reach the question of whether St. Cloud is an Indian within the meaning of the federal Major Crimes Act,[2]

---

1. St. Cloud had different counsel in federal and state court.

2. Although St. Cloud is a seventeen-year resident of the Lower Brule Reservation, and his wife and children are enrolled members of that tribe, St. Cloud is not an enrolled member of any federally recognized tribe. He is nearly half Ponca and was an enrolled member of that tribe, but the federal government terminated its trust relationship with the Poncas in 1962. Act of Sept. 5, 1962, Pub.L. No. 87–629, 76 Stat. 429 (codified at 25 U.S.C. §§ 971–80 (1988)). St.

nor do we apply the doctrine of comity to the federal district court's determination that St. Cloud is not an Indian in that sense.[3] Instead we hold that St. Cloud, having taken the position that he is not an Indian before the federal district court and having persuaded that court to adopt his position, is now judicially estopped from taking the contrary position before this court.

Although the doctrine of "judicial estoppel" has not been recognized by that name in South Dakota case law, it has long been recognized in concept. In *Behrens v. Baldenecker*, 76 S.D. 327, 331, 77 N.W.2d 917, 919 (1956), the plaintiff's inconsistent assertions in county court and circuit court about whether the defendants had an interest in certain property were said to "fall[ ] within the category of conduct playing fast and loose with the courts." *See also Nyswanger v. Roberts*, 67 S.D. 362, 293 N.W. 187 (1940); *Smith v. Reid*, 60 S.D. 311, 318, 244 N.W. 353, 356 (1932) (Campbell, P.J., concurring). More recently, this court held that "[o]ne who has taken a position in a judicial proceeding may not later take a position inconsistent with his earlier position." *Federal Land Bank of Omaha v. Johnson*, 446 N.W.2d 446, 447 (S.D.1989). *See also Warren Supply v. Duerr, Pliley, Thorsheim Dev.*, 355 N.W.2d 838, 840 (S.D. 1984).

"Many federal courts ... have long employed the doctrine...." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834

---

Cloud is also nearly half Yankton Sioux, but was denied enrollment in that tribe in 1983 because of his Ponca affiliation.

The conclusion of the federal district court in *St. Cloud v. United States*, 702 F.Supp. 1456 (D.S.D.1988), that St. Cloud is not an Indian for purposes of federal criminal jurisdiction, is questionable. The decision correctly notes that enrollment in a federally recognized tribe is not a prerequisite of Indian status under the Major Crimes Act, 18 U.S.C. § 1153. The decision also finds that, even disregarding St. Cloud's ethnic identity in the terminated Ponca tribe, he amply meets the two-prong test of substantial Indian blood quantum and non-racial recognition as an Indian first set forth in *United States v. Rogers*, 45 U.S. (4 How) 567, 11 L.Ed. 1105 (1846). For these reasons the federal district court states that "St. Cloud ... *normally* would qualify as an Indian subject to federal criminal jurisdiction." *St. Cloud*, 702 F.Supp. at 1466 (emphasis added). The court's sole reason for concluding that St. Cloud is not an Indian is his enrollment in the Ponca tribe with which the United States expressly terminated its trust relationship. The court relies on *United States v. Heath*, 509 F.2d 16 (9th Cir.1974), which held that a member of the terminated Klamath tribe committing a crime on a federally recognized reservation was not subject to the Major Crimes Act. The critical distinction between Heath and St. Cloud, however, is that Heath apparently rested her claim to Indian blood quantum solely on her Klamath heritage. In contrast, the court found that St. Cloud has sufficient blood quantum to qualify for Indian status apart from his Ponca heritage. The better reading of the *Heath* rule would seem to be that termination of a tribe bars any claim a member might have to Indian status *through membership in the terminated tribe.* To read tribal termination as an absolute bar to the Indian status of any tribal member, for all purposes and under any circumstances, leads to the anomalous result that if St. Cloud were ethnically half Sioux and half European instead of half Sioux and half Ponca, he would be "more of an Indian" for federal criminal jurisdiction purposes—which is precisely the holding of *St. Cloud v. United States*.

3. Comity is not a helpful doctrine when jurisdiction is at issue. "[C]omity ... does not exist as a matter of right, but is merely a rule of practice and convenience and is fully in the discretion of [this] court." *State v. Daly*, 454 N.W.2d 342, 344 n. 2 (S.D.1990). Before we can exercise our discretion and apply comity to the decision of the lower federal court, we must find that the federal court "actually had jurisdiction over both the subject matter and the parties." *Id.* at 344; *Mexican v. Circle Bear*, 370 N.W.2d 737, 740 (S.D.1985). But that is exactly the point under challenge. *See* my dissent in *Daly*, 454 N.W.2d at 345 (Sabers, Justice, dissenting). Therefore, invoking comity does not permit this court to avoid an independent inquiry into the federal court's jurisdiction—and, in this case, that would mean an independent inquiry into St. Cloud's Indian status, were it not for our holding that St. Cloud is judicially estopped from asserting that he is an Indian.

Despite the suggestion in Justice Henderson's writing, I am not denigrating the rule in *Daly* by questioning whether comity has any application in this case. On the contrary, I am applying the rule in *Daly* which he quotes in full: that comity may be extended *only* if this court determines that the foreign court "actually had jurisdiction over both the subject matter and the parties."

It is elementary logic that if the subject of the foreign court's decision concerns its own jurisdiction, it begs the question to extend comity to that decision because a finding of jurisdiction by *this* court is a *prerequisite* to extending comity.

F.2d 208, 212 (1st Cir.1987). *See also Total Petroleum Inc. v. Davis*, 822 F.2d 734, 737 n. 6 (8th Cir.1987).

> It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position....

*Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578, 584 (1895).

■ Unlike collateral estoppel or equitable estoppel, judicial estoppel requires neither privity between parties in the two proceedings nor detrimental reliance by the other party. "The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather it is the intentional assertion of an inconsistent position that perverts the judicial machinery." Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L. Rev. 1244, 1249 (1986). "Judicial estoppel is applicable even if one of the proceedings occurred in state court and the other in federal court." *Id.* at 1267.

■ In summary, judicial estoppel is applied when four prerequisites are present:

(1) A party's inter-proceeding inconsistency must be about a matter of fact, not law.

(2) The position the party took in the prior proceeding must have been a significant factor there.

(3) The two positions must be absolutely irreconcilable.

(4) The prior position must not have been taken as a result of mistake, inadvertence or fraud upon the party taking the position.

*Id.* at 1262–65. In addition, most jurisdictions applying the doctrine require that the position asserted in the prior proceeding must have been accepted by the court. *Id.* at 1246, 1255–58.

Applying these factors to St. Cloud's inconsistent assertions about his Indian status demonstrates conclusively that he is now judicially estopped from claiming to be an Indian under the exclusive criminal jurisdiction of the United States:

(1) "[R]acial status is a factual question, decided by the trier of fact." Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze*, 18 Ariz.L.Rev. 503, 552 n. 249 (1976). *See also Westmoreland v. United States*, 155 U.S. 545, 15 S.Ct. 243, 39 L.Ed. 255 (1895).

(2) St. Cloud's Indian status was the only issue in *St. Cloud v. United States*, dispositive of whether his federal sentence would be set aside.

(3) The two positions are absolutely irreconcilable because St. Cloud cannot be both an Indian and a non-Indian for purposes of federal criminal jurisdiction.

(4) St. Cloud's position as to his own identity as an Indian did not result from mistake, inadvertence or fraud.

Finally, St. Cloud succeeded in persuading the federal district court to adopt the position he was then asserting. *St. Cloud v. United States*, 702 F.Supp. at 1466.

Since St. Cloud is now estopped from claiming to be an Indian for federal criminal jurisdiction purposes, and he puts forward no other argument against state jurisdiction, the trial court's conclusion of law that it had subject matter jurisdiction is affirmed.

### 2. *Kidnapping Instructions*

■ The trial court provided the jury with several instructions about the kidnapping charge, one of which reads as follows:

> In the crime of kidnapping as charged in the Information, it is not a necessary element of the offense that the person who is the subject of the offense be carried, moved, or caused to move any distance from the point of the forcible seizure, confinement or taking and unlawful restraint.

Jury Instruction No. 17, Settled Record 150.

This instruction is an accurate statement of South Dakota's kidnapping statute,

SDCL 22–19–1.[4] However, St. Cloud objects to this instruction, and proposed a substitute which the trial court rejected, because he claims it does not reflect the way in which *State v. Reiman*, 284 N.W.2d 860 (S.D.1979) modifies the kidnapping statute.

In *Reiman*, two men abducted a woman from a parking lot and took her to a building. At the building they were joined by two other men. All four raped the woman. The court held that while the two abductors were properly charged with both rape and kidnapping, the two defendants who joined them at the building could be convicted only of rape. "We find it unreasonable to sustain a conviction for kidnapping which is unsupported by evidence aside from acts incidental only to another crime." *Id.* at 873. This ruling effectively "narrows the applicability of the South Dakota kidnapping statute to those cases in which 1) the kidnapping is not an essential element of some other clearly identified crime and 2) the victim is exposed to an increased risk of harm because of the kidnapping." *State v. Curtis*, 298 N.W.2d 807, 810 (S.D. 1980). St. Cloud contends that there is a factual question whether his forcible movement of the counselor from her car to the abandoned house meets both prongs of the *Reiman/Curtis* test to constitute the separate crime of kidnapping, and that the *Reiman/Curtis* test should therefore have been submitted to the jury.

However, *Curtis* itself narrowed the applicability of *Reiman* in denying the defendant a limiting kidnapping instruction such as St. Cloud now seeks. In *Curtis*, the defendant committed attempted murder during the course of a forced automobile ride.

[W]hen a defendant forces the driver of a vehicle to take him to places as he (defendant) wishes to go, the defendant is guilty of kidnapping.... [I]t cannot be shown, nor does the evidence indicate, that the kidnapping was incidental to another crime.

298 N.W.2d at 810–811 (citing *State v. Autheman*, 47 Idaho 328, 274 P. 805 (1929)). *Accord State v. Reed*, 313 N.W.2d 788, 789 (S.D.1981) ("The seizure and removal from a Rapid City street to rural Pennington County was an entirely separate act from the act of forcible rape.").

■ Neither movement nor prolonged confinement of the victim is an essential element of first-degree rape under SDCL 22–22–1(1). Moreover, most movement of rape victims by their attackers is designed to seclude the victim from possible assistance and to prevent escape—which inevitably increases the risk of harm to the victim.

We read *Reiman* and its progeny merely to say that a kidnapping may be incidental to another crime when the kidnapping consists either of confinement of minimal duration or of minimal movement within the same premises. Under such circumstances, a jury instruction setting forth the two-prong *Reiman/Curtis* test may be warranted. Where, however, the kidnapping consists of prolonged confinement or movement from one premises to another—even if only from a parked car to an abandoned house—then one and probably both prongs of the *Reiman/Curtis* test cannot be met and the kidnapping cannot be considered incidental to another crime. Under such circumstances no *Reiman/Curtis* instruction need be submitted to the jury.

"A trial court must instruct a jury as warranted by the evidence presented." *State v. Grey Owl*, 295 N.W.2d 748, 750 (S.D.1980) (citing *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D.1979) and *Egan v. Sheffer*, 86 S.D. 684, 201 N.W.2d 174 (1972)). "[J]ury instructions are adequate when, considered as a whole, they give the full

---

4. SDCL 22–19–1 reads in part:

Any person who shall seize, *confine*, inveigle, decoy, abduct or carry away any person and hold or detain such person ... for any of the following reasons:

(2) To facilitate the commission of any felony ...

(3) To inflict bodily injury on or to terrorize the victim ...

is guilty of kidnapping. (Emphasis added).

and correct statement of the law applicable to the case." *Id.* at 751 (citing *Mueller v. Mueller*, 88 S.D. 446, 221 N.W.2d 39 (1974) and *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958)).

We hold that the evidence presented in this case warrants no instruction about the *Reiman/Curtis* test. No reasonable jury applying that test correctly could have concluded that St. Cloud's kidnapping of the counselor was merely incidental to rape. We affirm the trial court's denial of St. Cloud's proposed kidnapping instruction.

### 3. *Sufficiency of the Evidence*

■ St. Cloud moved for acquittal on both the kidnapping and the rape count because he claimed the evidence was insufficient to support his conviction. He appeals the court's denial of his motions for acquittal.

■ We must sustain the jury's verdict if the evidence, and the inferences from the evidence that a jury may have drawn, support a rational theory of guilt. *State v. Ashker*, 412 N.W.2d 97, 105 (S.D.1987).

> Our standard of review in passing on the propriety of the denial of a motion for judgment of acquittal is whether the state has made out a prima facie case from which the jury could reasonably find the defendant guilty. Questions of credibility and of the weight of the evidence are for the jury.

*State v. Dirk*, 364 N.W.2d 117, 121 (S.D. 1985).

We find no merit in St. Cloud's claim that such a prima facie case supporting a rational theory of guilt was not made. Like the unsuccessful appellant in *State v. Miller*, 429 N.W.2d 26, 38 (S.D.1988), St. Cloud "simply recites whatever evidence is most favorable to him and derides unfavorable evidence and inferences therefrom[.]"

Affirmed.

MORGAN, Retired Justice, concurs.

MILLER, C.J., and WUEST and HENDERSON, JJ., concur specially.

MORGAN, Retired Justice, participating.

HERTZ, Circuit Judge, Acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (specially concurring).

Although I agree to affirm this conviction and upon the basis of "judicial estoppel," I disagree with the rationale in footnote three of the majority opinion.

This appeal can also be decided in favor of the State on the doctrine of comity. In *State v. Daly*, 454 N.W.2d at 345, Justice Sabers (present author of this opinion) dissented. I still recognize *Daly* as good law and not eroded by footnote three of this opinion.

In *Daly*, this Court recognized that the doctrine of comity can apply to a federal judgment. Therefore, it can apply here and I believe that it should. This Court recognized certain "conditions precedent" to the application of this doctrine by the following criteria:

> The Court recognized as "conditions precedent" to the application of the doctrine of comity the following:
>
> 1. The foreign court actually had jurisdiction over both the subject matter and the parties;
> 2. The decree was not obtained fraudulently;
> 3. The decree was rendered by a system of law reasonably assuring the requisites of an impartial administration of justice—due notice and a hearing; and
> 4. The judgment did not contravene the public policy of the jurisdiction in which it is relied upon.

Justice Sabers' conceptual difference is to a case this Court handed down approximately seven months ago. He now employs a footnote, in effect, to disregard our recent opinion and to elevate his dissent. Here, the author's opinion, in said footnote, apparently is: We cannot say, in the case before us, that "The foreign court actually had jurisdiction over both the subject matter and the parties, i.e., criteria one above."

With his conclusion, I disagree.

First, the federal court's decision on matters within its jurisdiction should not be deemed "questionable" by our judicial fiat. The federal judge had jurisdiction to determine that the federal court had jurisdiction. In the federal court, the federal judge had to "go to the merits of the question." He had to legally explore the merits of the jurisdictional claim. He had the right to determine if St. Cloud was not an Indian within the meaning of the federal Major Crimes Act. For the members of this Court to independently review the federal judge's decision on said issue is wrong. And that is precisely what the author would have us, theoretically, do in the future. The federal courts would never permit us to "independently review" their jurisdiction, as Justice Sabers would hold that we do. The United States has a federal system of courts and a state system of courts. The courts—the state courts as well as the federal courts—play an important role in maintaining federalism. Federalism remains strong, not only as an ideal but also as a constitutional principle.

Second, the federal order was not fraudulently obtained.

Third, the procedures employed by the federal court reasonably assure the requisites of the impartial administration of justice.

Fourth, the decision of the federal court did not contravene the public policy of the jurisdiction upon which it relied.

Therefore, my conclusion is that comity applies here—not as a matter of right—but rather as a continuation of the criteria we recently espoused.

MILLER, C.J., and WUEST, J., join this special concurrence.